IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF OHIO

**FILED**

SEP 2 3 2024

CLERK. U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

**Jasmine Doss**
5520 Beavercrest Drive #6
Lorain, Ohio 44053

        Plaintiff,

v.

**City of Amherst, Ohio**
c/o Anthony Pecora, Director of Law
Pattrick Ward, assistant Law Director(facts of case)
Amherst City Hall
206 South Main Street
Amherst, Ohio, 44001

**Christopher Alten** (in his official and personal capacities)
911 N Lake St,
Amherst, OH 44001

**Jake Podrosky** (in his official and personal capacities)
911 N Lake St,
Amherst, OH 44001

**Jared Warner** (in his official and personal capacities)
911 N Lake St,
Amherst, OH 44001

**Brett Grandy** (in his official and personal capacities)
911 N Lake St,
Amherst, OH 44001

**Mark Cawthon** (in his official and personal capacities)
1212 Meadowbrook Court
Amherst, OH 44001

**Jake Perez** (in their official and personal capacities)
911 N Lake St,
Amherst, Ohio, 44001

Case No. **1:24- CV  01622**

**JUDGE FLEMING**

Judge _____

**MAG JUDGE GRIMES**

Magistrate Judge _____

**Thomas Januzzi** (Mentioned for facts of case)
85 S Main St,
Oberlin, OH 44074

Defendants.

## COMPLAINT WITH JURY DEMAND

### NATURE OF ACTION

1.      This is a civil-rights action for violations of the United States Constitution under 42 U.S.C. § 1983, Title 42 U.S.C. §1985. depriving persons of rights or privileges, 18 U.S. Code § 242 deprivation of Rights Under Color of Law, 18 U.S. Code § 241, civil rights under 42 United States Code section 1983 (hereafter section 1983) and Civil Code section 52.1, abuse of process, ORC §2921.03 Intimidation, ORC §2921.05 Retaliation, ORC §§2921.45 Interfering with civil rights, conspiracy against rights, (including violations of the First, Fourth, Sixth, and Fourteenth Amendments to the Constitution), with pendent claims for violations of Ohio law. Ohio state-law claims include false arrest, malicious and retaliatory prosecution, unwarranted searches and seizures, perjury, deliberate fabrication of evidence, intentional and negligent infliction of emotional distress, negligence, and (against the city) negligent hiring, retention, training, supervision, and discipline. Statutory civil liability for criminal acts that included interference with civil and statutory rights, intimidation, witness tampering, and violation of Ohio Judicial Code of Conduct.

2.      Plaintiff Jasmine Doss is a resident of Lorain, Ohio, who was the victim of false arrest and malicious prosecution for exercising constitutionally protected activities by Defendants, Christopher Alten, Jake Podrosky, Jared Warner, Mark Cawthon, and Brett Grandy of the Amherst City Police Department. Defendants acted with implied malice and falsely arrested Mrs. Doss without probable cause. The APD body worn audible records reflect that Defendants knowingly and intentionally fabricated evidence,

including manufacturing materially false, fictitious, and fraudulent statements, reports, complaints and entries for the criminal prosecution of Mrs. Doss in retaliation to her exercising her First Amendment rights.

**PARTIES**

3.      Mrs. Doss lives in Lorain, Ohio. [1]

4.      Defendant City of Amherst, in Lorain County, Ohio is an Ohio political subdivision as defined in Ohio Revised Code § 2744.01, of which the City of Amherst Police Department is a part. Amherst, through its police department, employs Defendant Christopher Alten. Amherst is liable for acts and omissions taken under its customs, policies, or practices. Amherst is also responsible for training and supervising its employees in carrying out their duties in a lawful manner.

5.      Defendant Christopher Alten was an Amherst police sergeant during all relevant times. He was acting under the color of state law. He is sued in both his official and personal capacities.

6.      Defendant Jake Podrosky was an Amherst police officer during all relevant times. He was acting under the color of state law. He is sued in both his official and personal capacities.

7.      Defendant Jared Warner was an Amherst police officer during all relevant times. He was acting under the color of state law. He is sued in both his official and personal capacities.

8.      Defendant Brett Grandy was an Amherst police officer during all relevant times. He was acting under the color of state law. He is sued in both his official and personal capacities.

9.      Defendant Mark Cawthon was the Amherst Chief of police during all relevant times. He was acting under the color of state law. He is sued in both his official and personal capacities.

10.     Defendant Jake Perez was an Amherst police Lieutenant during all relevant times. He was acting under the color of state law. He is sued in both his official and personal capacities.

---

[1]APD - Amherst Police Department

11.    Defendant Thomas Januzzi was an Oberlin Municipal Magistrate during all relevant times. He was acting under the color of state law. He is immune from civil liability.

12.    Defendant Patrick Ward was assistant Director of Law and prosecutor for the City of Amherst during all relevant times. He was acting under the color of state law. He is immune from civil liability.

## JURISDICTION

13.    This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343, and 2201, for federal claims under 42 U.S.C. §§ 1983 and 1988, which provide for attorney and expert fees. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

14.    This Court has personal jurisdiction over Defendants, who reside in and conduct business in this District.

15.    Venue is proper under 28 U.S.C. § 1391, because the events giving rise to the claims took place within this District.

## FACTS

### APD harassed and threatened to arrest Mrs. Doss over a three-week period for preaching the gospel on public sidewalks in downtime Amherst.

16.    Mrs. Doss was 31 years old at the time of the incidents related to this complaint. She had lived near Amherst, in the city of Lorain, for 5 months. She is married, but separated, a single parent of two small children, in full time outreach ministry and a law-abiding citizen. Mrs. Doss began being harassed by the Amherst City police department on July 29, 2023, after businesses began complaining about her preaching on the public sidewalk outside their establishments. Mrs. Doss preached with sound amplification after establishing and printing the Amherst city ordinance in July 2023, which allowed the use of sound amplification. The ordinance did not restrict time, manner, or place, and Mrs. Doss Preached in a zoned business area.

17.    Mrs. Doss recorded each encounter with the APD via Go-Pro, and in each encounter, she was continuously harassed, intimidated and threatened with arrest for simply preaching the gospel to lost souls. In her first encounter with Defendant Sargeant Christopher Alten, on July 29, 2023, he advised her that he was called there by the Ghost tree bar establishment because they did not want Mrs. Doss preaching outside of their establishment and asked her to leave, in which Mrs. Doss asked him to articulate reasonable suspicion that a crime had been, was being or a foot in which he replied that Mrs. Doss message was disturbing the peace of ghost tree bar patrons and owners, in which she advised him that the supreme Court ruled that a constitutionally protected activity could not be converted into a crime and therefore does not constitute probable cause for an arrest. See Miller v. U.S., 230 F. 2d. 486, 489. Mrs. Doss also advised him during that interaction that she reviewed the ordinance beforehand, to ensure she could use the amplification, and advised Alten that she would only preach for approx. one to 1 ½ hours, and asked Alten if there was a decibel level she could comply with because the ordinance did not state a frequency. Alten replied that there was none, and advised her there was no curfew because it was Saturday but still asked if she could wrap up her preaching shortly. Mrs. Doss stated she would turn down her amplification but would continue to preach. Alten Continued patrolling the area and approached Mrs. Doss three more times to ask her when she would be leaving the area, even when she was not utilizing sound amplification and engaging in a one-on-one conversation with a couple. Mrs. Doss was not arrested in this encounter.

18.    Mrs. Doss Preached in Amherst two more times on two separate occasions without being arrested she continued to engage in her freedom of speech, press, religion and the expression thereof. Her body worn camera records show that she was constantly threatened by APD with various misdemeanor crimes, including disorderly conduct and disturbing the peace. Mrs. Doss did not give into the intimidation and continued to preach with sound amplification in each encounter, preaching a total of four times in Downtown Amherst, including the night of her arrest. Mrs. Doss continuously attempted to reason with

Defendants, having over 11 encounters with APD over a three-day period, all of which she was threatened with arrest. On September 8, 2023, Defendant, Alten accelerated that harassment, along with a female resident who opposed the preaching of Mrs. Doss, and Alten approached Mrs. Doss a total of four times in a 47 min period to suppress her speech. Defendant, Alten is seen and heard accusing Mrs. Doss of a charge of disorderly for preaching, and in the very same encounter a young man is seen driving his car up to Mrs. Doss and began blasting his music to drown out the preaching for approximately three minutes, Alten can be seen laughing and did not even reprimand that individual, but went on to threaten Mrs. Doss in the same encounter two more times with arrest. Unable to compel Mrs. Doss to leave, Alten then advised Mrs. Doss that she would be arrested in the future after he spoke with his law director and learned the exact charges of her future arrest, with this he left the scene without arresting Mrs. Doss.

19.     The next day, on September 9, 2023, Mrs. Doss attempted to contact the mayor speaking with his secretary, Amherst law director, Mark Cawthon, and Jacob Perez to report Alten's conduct from September 8, 2023, including his defamation to residents about the intents of Mrs. Doss exercising her rights and ask for assistance from his superiors, none of her calls or complaints were ever addressed by his superios. Mrs. Doss records show that she began pursuing legal advice on September 9, 2023, as the actions and misconduct of the APD began to escalate, Mrs. Doss was concerned that the APD would retaliate against her based on her records of previous encounters and Defendant Alten foretelling her future arrest in the September 8th encounter and before her arrest on September 15, 2023.

20.     APD public records show that on September 9, 2023, Defendant Alten and Mrs. Doss read over the city ordnance and again established that Mrs. Doss was indeed within her right to use sound amplification, Alten also stated in that interaction that he had clarified this fact with the city Law Director, and proceeded to ask Mrs. Doss if she would be willing to preach at an earlier time, convincing Mrs. Doss to preach in proximity to the Cedar Pub establishment, which was adjacent from the location where she

normally preached, he stated there were less residents living in the proximity of the Cedar Pub establishment, he also told her she would reach more people with the gospel if she preached earlier than previously. Mrs. Doss agreed to all his recommendations, hoping to finally put an end to the pressure and intimidation from APD to stop her preaching. On the night of September 9th Mrs. Doss followed the recommendations of Alten, Preached the gospel with opposition and police patrolling but without arrest. On September 15, 2023, Mrs. Doss once again followed those same recommendations of Alten.

21.     Shortly after her arrival on September 15, 2023 patrons and business owners began calling the police as they had in the weeks previous, being offended by the content of Mrs. Doss preaching. The Cedar Pub establishment's owner, Pamela Kregar arrived at her establishment and stated to Mrs. Doss that she was about to get Mrs. Doss arrested and called non-emergency APD to report her preaching in front of Mrs. Doss. Defendants, Jake Podrosky, Jared Warner, and Brett Grandy arrived on scene at the direction of Alten. Upon their arrival, Mrs. Doss advised them that she had already spoke to Defendant, Alten, in which Podrosky replied, "I just spoke with Sgt Alten" Podrosky's body audio records shows that Alten did not advised the defendants of his previous conversation and agreement with Mrs. Doss, but instead conspired and encourage them to arrest her from the exact location he previously recommended she preach. When Defendant's Warner arrived on the scene, he attempted to trespass Mrs. Doss from the public sidewalk, demanded that she stop using her amplification and demanding her to leave the area, stating she is to "leave now." And stated she was trespassing. Mrs. Doss advised the officers on the scene that she was well within her rights to preach in public and advised Officer Warner that Pamela Kregar did not own the sidewalk and declined all the unlawful demands of the officers to leave and stop preaching, and she continued to preach.

22.     Mrs. Doss preaches throughout northeast Ohio and often has challenging interactions with police initially due to the hostile environment in which she feels called to preach. Mrs. Doss is a former

Alcoholic and Drug addict and believes the Lord has given her a specific calling to reach the lost in these specific environments to share the message of the gospel to help others in bondage to these struggles, and this is what ultimately brought Mrs. Doss to the bar district in downtown Amherst. Mrs. Doss records show that she has amicable relationships with all the police departments throughout northeast Ohio, and works well with local law enforcement despite their opposition to her religious beliefs.

**Mrs. Doss's nightmare at the hands of Amherst police begins—even though they knew from the ordinances, constitutional law, previous encounters, Amherst police manufacturing, and fabricating evidence, witness tampering, and witnesses that Mrs. Doss had done nothing wrong.**

23.     Collective records show that between the dates of July 29, 2023 – September 15, 2023, APD dispatchers repeatedly advised callers of business owners, employees of businesses, residents, and patrons who called to complain about the inflammatory speech of Mrs. Doss preaching and her harassment defined by using amplification, that she was not doing anything illegal by preaching, stating to callers that she was allowed to preach with sound amplification per the city ordinance, and that the APD could not lawfully remove nor force the removal of Mrs. Doss from public property, stating they could only dispatch an officer to request that Mrs. Doss preach without sound amplification.

24.     This demonstrates that the Defendants, City of Amherst and its employees were not ignorant of the city's ordinance, and disproves their false claims that Mrs. Doss was prohibited from using sound amplification and therefore in violation of that ordinance, which the Defendants also used as probable cause for an arrest. Nor were the Defendants ignorant of Mrs. Doss clearly established right, to freely assemble, preach in public and record public officials in the course of their duties. Defendants were not ignorant nor mistaken to her clearly established right to be free from unwarranted searches and seizures, and unlawful arrest where no probable cause exist and therefore her clearly established right to be free from retaliatory, and malicious arrest and prosecution, resulting in her wrongful conviction.

25.    The Wrongful Conviction involved the deliberate fabricated of evidence by the APD law enforcement officials. Defendant, Wards, knowingly prosecuted the cases based on those fabricated evidence and in spite of the admission of those evidence being fabricated by the law enforcement officer guilty of fabricating the evidence both during the criminal trial, and during discovery of the criminal proceedings. Records support that both Mrs. Doss exercising free speech and notice of intent to litigate, both verbally in each encounter beginning on July 29, 2023 and submitted by letter to APD on September 16, 2023, were the motivating factors in the retaliatory prosecution. Defendants knowingly lacked probable cause, and these actions resulted in the wrongful criminal conviction of Mrs. Doss.

26.    Considering the extensive direct evidence of all previous encounters with Mrs. Doss engaging in the same constitutionally protected activity in which Defendant, Alten, was previously dispatched on three separate occasions and did not result in an arrest for dates, July 29, 2023, September 8, 2023, and September 9. 2023. APD could not have reasonably believed that Mrs. Doss, who was engaging in those same exact activities on September 15, 2023 was legitimately engaging in illegal activity, solely on the basis that they had previously deemed such activities lawful, constitutionally protected, and not in violation of any city ordinance as APD did not arrest Mrs. Doss on previous encounters despite reasonably suspecting that her rights were illegal and threatening her with arrest.

> "It is well established that an arrest without probable cause violates the Fourth Amendment." "Under the Fourth Amendment, [probable cause] exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" If "it was reasonable for an officer to suspect that the defendant's conduct was illegal," then "there was no violation of the Fourth Amendment." The standard is objective, and so "[w]e do not examine the subjective understanding of the particular officer involved."

27.    Defendants had three separate opportunities to previously arrest Mrs. Doss, but did not, because no probable cause existed. The direct evidence show that Mrs. Doss conduct was no different on September 15th, than the previous three encounters. It's then reasonable to assume without yet presenting the other objective evidence in this case and considering the fact that on the very night of Mrs. Doss arrest APD refused to dispatch PD after interviewing callers about Mrs. Doss conduct, ultimately deeming her conduct lawful and APD dispatchers advising three callers that Mrs. Doss had committed no crime nineteen minutes before the arrival of the Defendants, Podrosky, Warner, and Grandy. Since there is no other reasonable suspicion to be given as to why Mrs. Doss protected activities "could" later convert into probable cause for an arrest, other than that the Defendants knowingly, and with malice conspired to falsely arrest and criminally prosecute Mrs. Doss in retaliation for exercising her First Amendment rights. APD public records reflect and support both facts. Such records further reflect that the City of Amherst business owners did not want Mrs. Doss preaching in downtown Amherst, and APD dispatchers stating to residents that it was the business owners in downtown Amherst who mostly had a problem with Mrs. Doss presence and preaching, claiming such inflammatory preaching was hurting their businesses, these owners putting pressure on the Defendants to silence Mrs. Doss, and the Defendants putting pressure on Mrs. Doss to remain silent via false arrest. APD radio records also reflect Defendant, Alten expressing disgust to a 911 dispatcher about Mrs. Doss preaching.

28.    Ultimately the officers involved, arrested Mrs. Doss due to their own personal animosity against the plaintiff for not complying with any of their unlawful demands in all previous encounters, APD records reflect religious discrimination, and retaliation for Mrs. Doss continuously warning officers in every encounter that she would petition for a redress of grievance in the event that her rights were violated, APD public records further reflect and support this claim.

29.     Defendant Podrosky took a leading role in the investigation, responding to the scene of the incident, interviewing and soliciting witnesses, authoring an investigative report as the officer in charge. Defendant, Warner signed a sworn criminal complaint against Mr. Doss as the arresting officer, compiled of the resident's anger about Mrs. Doss speech and her threats to sue him.

30.     APD body audio records show Defendants, Jared Warner and Jake Podrosky knowingly and intentionally deprived Mrs. Doss of her constitutional rights. engaging in gross police misconduct, including, witness tampering, perjury, the fabrication of evidence, including false statements, claims, reports, and complaints, all of which were used to justify an arrest, criminal prosecution and the eventual conviction of Mrs. Doss.

> The First Amendment Prohibits Deliberate, Calculated Retaliatory Arrests Regardless of Probable Cause. "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for "engaging in protected" speech or activity. Nieves, 139 S. Ct. at 1722; Hartman v. Moore, 547 U.S. 250, 256 (2006). That foundational protection against "[o]fficial reprisal for protected speech" reflects the principle that retaliation "offends the Constitution [because] it threatens to inhibit exercise of the protected right." Hartman, 547 U.S. at 256 (quoting CrawfordEl v. Britton, 523 U.S. 574, 589 n.10 (1998)) (alteration in original).

**Falsely Arresting and prosecuting Someone for a Constitutionally Protected Activity Violated Clearly Established Law -- Defendant City of Amherst failed to adequately train its officers and empowered those officers to undertake unconstitutional acts on the City's behalf even after having dozens of civil rights lawsuits filed against them in the last decade alone.**

31.     Although the evidence objectively proves without a reasonable doubt that Defendants were not ignorant concerning clearly established law, and inspired by malice, conspired against Mrs. Doss to silence her speech and cover their corruption and misconduct.

32.     Shortly after Defendants, Podrosky and Warner's arrival on September 15, 2023, Podrosky body

worn audio, and dash cam records show Podrosky, Warner, and Cedar pub Owner, Pamela Kregar

meeting across from the cedar pub establishment after Mrs. Doss refused to comply with their unlawful

orders to leave. Defendant, Warner can be heard planning with Pamela Kreger and Podrosky about the

false claims they will use in the false arrest and prosecution of Mrs. Doss. All three individuals contributed

to the prosecution of Mrs. Doss. The following, is an excerpt transcript of the three parties' conversation

via body worn audio received via public record request:

> Pamela: What is wrong with her, being rude and telling my customers their going to hell, what's
> her problem"
> Podrosky: "She doesn't want to listen to me, I tried showing her the ordinance she said she spoke
> to Alten and I didn't know it, I told her I just spoke to Alten, so, I'm gonna go call Perez real
> quick.
> Warner: "I think we should just lock her up"
> Podrosky: "This is just a minor misdemeanor though"
> Warner: "Disturbing the peace, disorderly conduct"
> Podrosky: "I mean, I didn't print disturbing the peace, but disturbing the peace would fit also, but"
> Warner: "I mean I think we should just throw her in there, disturbing the peace, disorderly
> conduct, and we'll just say she was blocking the entrance at one point in time, Mrs. Kregar's got
> that one guy who's gonna say she was blocking him from getting in the bar, calling people names,
> this thing (points to ordinance)"
> Pamela: "mmhmm"
> Podrosky: "yeah just as many statements as we can."
> Pamela: "This isn't the first time she's done this"
> Podrosky: "Yeah, she did it last week too, I'm goanna go call Perez really quick I'll be right back.

33.     The following is an excerpt transcript of Defendants Podrosky, and Grandy, with two witnesses

recruited to make a complaint against Mrs. Doss after her arrest, both witnesses' testimony was used in the

criminal prosecution of Mrs. Doss. The officers review their statements at the scene and after Mrs. Doss is taken into custody. Conversation is via body worn audio received via public record request:

> Podrosky: "Hey Grandy, did that couple give you a statement that said she blocked them from getting into Cedar Pub?"
>
> Grandy: "you're talking about the kids, who said she told them they were going to hell and what not, yeah I got them" (Grandy gives Podrosky all the statements for review at the scene.)
>
> Jason Miller: "Does anyone know exactly what she's saying, I am trying to be as descriptive as possible"
>
> Amy: "Ok, you can put that she told me I was going to hell and there is nothing but fire there"
>
> Podrosky: "This person didn't put anything about a loudspeaker, that, that needs to be in there because telling you you're going to hell actually isn't Illegal.
>
> Amy: Ok Ill fix it, she was right in my face.
>
> Jason Miller: "I put I can't sit on my porch, is that good?"
>
> Grandy: "Just, in your own words just write what you think happen"
>
> Podrosky: "Yeah it has to be in your own words……like……. things like……. blocking or like getting in my way, things like that um…….. if anyone says that she um was blocking my path or getting in my way you know, wouldn't move, those are pretty big deals for persisting and disturbing the peace"
>
> Grandy: "Yeah, it's just, this thing" (Points to body mic.)

[1] Wilkins v. DeReyes, 528 F.3d 790, 805 (10th Cir. 2008) (fabricating evidence by coercing false statements from witnesses and using them to support arrest and prosecution of plaintiffs would constitute malicious prosecution in violation of plaintiffs' Fourth Amendment rights not to be arrested and detained without probable cause)

Pitt v. District of Columbia, 491 F.3d 494 (D.C. Cir. 2007) (police officers may be held liable under § 1983 for malicious prosecution to the extent defendants' actions caused the plaintiff to be "seized" without probable cause in violation of the Fourth Amendment, in accord with decisions from other circuits cited)

---

[1]

34.     There is little doubt that Defendants, knowingly having no probable cause to arrest Mrs. Doss,

sought to invent their own probable cause before, during, and even after the arrest of Mrs. Doss to cover

up their misconduct. APD body worn audio, and dash cam records reflect that the Defendants engaged in

gross police misconduct during the night, not only violating Mrs. Doss rights, but also violating various

department policies including deactivating and reactivating body audio to intentionally omit misconduct.

Defendants, Podrosky, body worn audio and dash cam records show him desperately trying to find

"witnesses" to agree with his "blocking scheme" to ensure he had enough probable cause via fabricated

evidence to prosecute Mrs. Doss in hopes of avoiding civil litigation. The following is an excerpt transcript

of Defendants Podrosky body worn audio, attempting to recruit two more people he knew personally

named, Travis and Spencer to make a complaint against Mrs. Doss that she blocked their mobility, this

occurred after the arrest of Mrs. Doss. Conversation is via body worn audio received via public record

request:


<u>Podrosky:</u> "Hey Travis, Spencer, come over here, so like, were u the ones, was she blocking
you guys at all?"
<u>Travis/Spencer:</u> "So she follows me around the corner and started screaming that all white
people are going to hell, and I am just thinking that's pretty hateful when she's saying that, I
know a girl inside cedar pub who recorded about 7 mins of the whole thing, but she doesn't
want to be named or involved, I'd be willing to go in there and get the video for you."
<u>Podrosky:</u> "But did she like block you guys at all, because if, if she's blocking you" *Interrupts
  Travis/Spencer: "She definitely kept her six-foot distance the entire time"
<u>Podrosky:</u> (Heavily Sighs) Ok, Ok, well, I gotta see if I can find video."

35.     The following is an excerpt transcript of Defendant, Grandy body worn audio, with witness Jason

Miller, a witness in the criminal prosecution of Mrs. Doss. Conversation is via body worn audio received

via public record request:


Grandy: "Was she causing an annoyance to you"
Jason Miller: "Oh yeah"
Grandy: "Were you just trying to be in your home, and it was causing you an inconvenience?"

Jason Miller: "Yeah well, like I said, the girl, Amy, she lives right there"

Grandy: "And she can hear it clear as day?"

Jason Miller: "There she is, hey Amy, Amy"

Grandy: "Yeah, tell her to come and write a statement"

Jason Miller: "You want to make a statement about her?"

36.    Defendants lacked probable cause to arrest Mrs. Doss in all four encounters, absent of any probable

cause, such an arrest for public speech and seizure of property violated Mrs. Doss' First and Fourth

Amendment rights. *See generally Leonard v. Robinson*, 477 F.3d 347, 355, 358 (6th Cir. 2007).

---

[1] See, e.g,. Harris, 513 F.3d at 521 (under Ohio law malice may be inferred from lack of probable cause);
Seelig v. Harvard Coop. Soc'y., 246 N.E.2d 642, 646 (Mass. 1969) (lack of probable cause is a sufficient
basis for an inference of malice).

See, Jones v. Cannon, 174 F.3d 1271 (11th Cir. 1999) (grand jury indictment broke causal chain); Taylor v.
Meacham, 82 F.3d 1556, 1564 (10th Cir. 1996) (indictment breaks causal chain, absent allegation of
pressure or influence by police, or knowing misstatements made to prosecutor). See Wheeler v. Cosden Lil
and Chemical Co., 744 F.2d 1131, 1132-33 (5th Cir. 1984) (break in the causal chain argument is only
applicable in false arrest and imprisonment cases).

Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir. 1988) (jury could find that defendants systematically
concealed from prosecutors, and misrepresented to them, facts highly material to decision whether to
prosecute) *Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018) (quoting *Smiddy v.
Varney*, 665 F.2d 261, 266 (9th Cir. 1981), *overruled on other grounds by Beck v. City of Upland*, 527 F.3d 853, 865
(9th Cir. 2008)).  However, the presumption can be overcome if a plaintiff establishes that officers "either
presented false evidence to or withheld crucial information from the prosecutor." *Id.* at 1116.  At that
point, "the analysis reverts back to a normal causation question" and the issue again becomes whether the
constitutional violation caused the plaintiff's harm. *Id.*  The deliberate fabrication of evidence implicates
"the fundamental due process right to a fair trial." *Richards v. County of San Bernadino*, 39 F.4th 562, 572 (9th
Cir. 2022).  This is true "regardless of the plaintiff's innocence or guilt . . . the right to a fair trial is
impinged either way." *Id.*  Accordingly, rather than a but-for causation standard, the appropriate standard
of causation is the "materiality causation standard," under which causation is established if the plaintiff
"can show a reasonable likelihood that the allegedly fabricated [] evidence could have affected the
judgment of the jury." *Id.* at 573-74.

[2] Qualified immunity denied for false charges claim that arose in 2010 because no "reasonable law
enforcement officer would have thought it permissible to frame somebody for a crime he or she did not
commit" (quoting Limone v. Condon, 372 F.3d 39, 50 (1st Cir. 2004))

ORC §§2921.12 – Tampering with records.
ORC §§2921.11 – Perjury
ORC §§2307.07 - Civil action for damages for criminal act.
ORC §§2921.45 - Interfering with civil rights.

**Trespassed and threatened to never to return to public property to preach in downtown Amherst.**

37.     Once Mrs. Doss arrived at the county jail, Defendant Warner failed to Mirandize her even after she advised him that he did not read her, her rights he ignored her and advised her she could never return to the public sidewalk from which she was arrested, or she would be arrested, stating that the side walk was indeed the private property of Pamela Kregar, thus Mrs. Doss rights are still be violated as of today.

38.     The next day, September 16, 2023, Mrs. Doss requested all records with every encounter Amherst PD and prosecutor Patrick Ward withheld, redacted and/or destroyed records surrounding the arrest of Mrs. Doss. The Intentional fabrication of evidence, the refusal to arrest Mrs. Doss in previous encounters, the body worn audio and dash cam records, Mrs. Doss Body worn records, emergency and non-emergency records, email records, the admission of guilt of supplying fabricated evidence to the prosecution by Defendant, Podrosky, the Perjury during trial, the conflicting testimony, and coercion of false statements by all Defendants involved in the arrest of Mrs. Doss leaves little doubt that the Defendants lacked probable cause. With respect to a crime— any crime—justifies an arrest, regardless of whether the arresting officer relied on or cited that offense when making the arrest. Defendants supplied the prosecution with fabricated evidence, coerced false statements for business owners and patrons and Mrs. Doss conviction were based on those facts.

39.     Trial records show that defense counsel established with Defendants Podrosky and Warner that the ordinance did not prohibit Mrs. Doss amplification, which disputes the false claim that the ordinance prohibited the amplification. Upon the arrest of Mrs. Doss, Podrosky is heard stating that Mrs. Doss needed to pick a different city to preach in, because their city ordinance was against her activities.

**Defendants Discriminated against Mr. Doss for lawfully exercising her religion & Defendants' Practiced Discriminatory Policing**

"Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."
















40.    The City of Amherst allows public speech with sound amplification for its public outdoor events, parades, festivals, and marches hosted in downtown Amherst. Some of these events include but are not limited to, "Dancing on Main Street," "Miracle on Main Street", "Dancing in the streets", "Walking on Wednesday," and "Morning mingles". These events include live entertainment, karaoke, music, and marching bands. On cross – examination Defendant, Warner stated that officers do not check whether participants have permits at the events, nor are permits required for public speaking. The video records of such events hosted in downtown Amherst very clearly show that the city of Amherst and its ordinance allows public speaking with the use of sound amplification devices, except if your Christian and using sound amplification for preaching.

41.    While Ordinances may restrict the "time, manner, and place" of speech, it may not restrict the speech itself, and such regulations must be "content neutral." Amherst has since updated its Ordinances after the arrest of Mrs. Doss.

> In _Terminiello v. Chicago (1949)_, the Supreme Court narrowed the scope of what constitutes fighting words. The Court found that words which produce a clear and present danger are unprotected (and are considering fighting words), but words which invite dispute and even cause unrest are protected (and are not considered fighting words).

42.    The evidence show that the Amherst city police department deemed bible verses to be fighting words, gross, course gestures, disorderly and disruptive to those who opposed Mrs. Doss views. These conclusions were made in their official capacities.

> "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

43.    The City of Amherst and its employees continue to violate and deprive the people in whom they are employed to serve as public servants of their civil and constitutional rights in defiance and indifference to the supreme and federal laws of this land in an absolute abuse of power and process with the full support of judiciary power. This is why Defendants continue to commit atrocities as repeat offenders and have not been deterred by civil rights claims thus far.

44.    The City of Amherst hosted and currently hosts parades, marches, festivals and various outdoor events, in downtown Amherst, in the exact location where Mrs. Doss was exercising freedom of religion. Defendant, Podrosky failed to demonstrate content neutral equally applied law between Mrs. Doss and the residents in the image descriptions participating in singing and speaking with sound amplification without permit. These events include participants engaging in live entertainment, open mic, and karaoke in downtown Amherst. The trial records show Defendant Podrosky failing to demonstrate the differences between Mrs. Doss' rights and the rights of others who engage in equivalent and louder forms of expression in downtown Amherst, the only distinction being the content of the message spoke.

### Prosecutorial punishment for intent to petition for a redress of grievance.

45.    On February 12, 2024, Mrs. Doss bench trial began, in which all three officers involved in the arrest of Mrs. Doss testified, commit perjury on cross – examination. The witness's testimony and cross examination did not support the manifest weight of evidence against Mrs. Doss in the alleged claims. Trial record shows prosecutorial and judicial misconduct. Such records were subject to cross- examination and testimony under oath, are relevant to the facts of this case, and contain further objections not previously made in the criminal proceedings. The record includes factual evidence that the city of Amherst prosecuted Mrs. Doss for serving APD with notice of intent to sue on September 16, 2023 in retaliation to

her exercising First Amendment right, and declining the state's release-agreement dismissal. The conviction relied on Mrs. Doss constitutionally protected activities.

46.     Record includes Mrs. Doss interrogation during cross examination Prosecutor Ward further establishes in the trial court record that Mrs. Doss was not prohibited from using the amplification, as Defendant, Podrosky falsely claimed on the record during the arrest of Mrs. Doss. Ward's line of questioning of Mrs. Doss mostly contained her intention of civil proceedings, having accused Mrs. Doss on cross examination of trying to "provoke an arrest to drum up a lawsuit" essentially blaming Mrs. Doss for the misconduct of the APD. Despite continual objections from defense counsel, on the basis that the prosecutor's behavior was improper because the line of questioning was not relevant to the facts of the criminal case, Thomas Januzzi allowed for such conduct and overruled each objection, although he knew they were not relevant to the case, and did not allow the opportunity for Mrs. Doss to plead the fifth despite the line of questioning being unrelated to the facts of the case. Ward's used Mrs. Doss answers about her intent to sue in his closing arguments as "incriminating evidence" admissible and relevant to the criminal proceedings.

Transcript of improper questioning/comments (not an exhaustive list) – trial court record:

Patrick Ward: "What about what Jenna Huffman said, she stated she could hear you from the Brew Cattle"

Mrs. Doss: "Jenna Huffman lied several times on the stand today" (Jenna Huffman and Fiancé' gave conflicting testimonies despite claiming they were together when they approached Mrs. Doss, and both witnesses were involved in the conspiracy to provide false information.)

Patrick Ward: "So everyone is lying except you?"

Mrs. Doss: "Not everyone, Just the witnesses you called to testified."

"How many lawsuits have you filed against any police department, where you named law enforcement officers?"

"How many lawsuits have you filed against police departments, where you named law enforcement officers in the state of Ohio?"

"How many lawsuits have you filed against political subdivisions in the state of Ohio?"

"How many lawsuits have you filed against a political subdivision in the United States?"

"When law enforcement approach you, you stated "make a mistake, was that a threat to APD that you would sue them?

"If you've never filed a civil rights lawsuit, how are you so knowledgeable about litigation terminology?"

"Why couldn't you just preach without your megaphone, and comply with law enforcement orders?"

"Couldn't you have preached without your megaphone?"

47. The entirety of the trial record demonstrates that the criminal proceedings were a retaliatory response to the aforementioned civil litigation against APD, which did not constitute probable cause for an arrest nor prosecution. Absent any probable cause for prosecution, Ward raised the objection, requesting that Defendant, Januzzi (Listed for facts relevant to this case only.) consider Mrs. Doss intent to sue admissible in the criminal proceedings, claiming it went to Mrs. Doss state of mind, because he believed Mrs. Doss engaged in protected activities to bait law enforcement into arresting her to "drum up a lawsuit against APD." The state could never prove such a ridiculous assertion since protected activities are not arrestable offenses, and therefore could not "bait" law enforcement into misconduct. Moreover, this assertion further proves that Mrs. Doss was not arrested for a criminal offense nor violating any ordinances, she was only arrested for engaging in First Amendment protected activities which fails to satisfy the elements required for probable cause.

48. In a clear conflict of interest, Thomas Januzzi, failed to uphold the integrity and independence of the judiciary, dispose of judicial matters promptly, diligently discharge administrative responsibilities without bias, and engaged in conduct that is prejudicial to the administration of justice. Having lied in his official decision about facts never heard nor reflected in the trial court record, Thomas Januzzi essentially made up

his own facts about the case and based his decision of Mrs. Doss guilt on his invention of facts and not the facts reflected in the trial court record. Januzzi had prior legal involvement and political affiliations with APD, having presided over two recent cases, resulting in a civil rights 1983 lawsuit against APD. Januzzi also expressed personal bias against Mrs. Doss' message and methodology both at sentencing and in rendering his written decision against Mrs. Doss, stating to Mrs. Doss that "there are other places and other ways to evangelize" asserting that Mrs. Doss was convicted due to her expression in downtown Amherst. Januzzi also intentionally overcharged Mrs. Doss for allied offenses subject to merger, despite defense counsel raising the issue at sentencing. Recourse for such ethical violations on behalf of both parties will be pursued with the Six circuit, Ohio Disciplinary counsel, and Ohio state Bar association but are relevant to the fact of this case.

> Courts have held that fabricated evidence may not be used to prosecute or convict an individual. *See, e.g., Devereaux*, 263 F.3d. at 1075 ("the knowing use by the prosecution of perjured testimony in order to secure a criminal conviction violates the Constitution"); *Cole v. Carson*, 802 F.3d 752, 768 (5th Cir.2015) ("a victim of intentional fabrication of evidence by officials is denied due process when he is either convicted or acquitted").

> In Cole the court held that although "there is no 'substantive right under the Due Process Clause of the Fourteenth Amendment to be free from criminal prosecution except upon probable cause,'" Cole, 802 F.3d at 765 (quoting Albright, 510 U.S. at 268), "[w]here police intentionally fabricate evidence and successfully get someone falsely charged with a felony as a cover for their colleagues' actions, and the Fourth Amendment is unavailing, there may be a due process violation," id. at 773.

**Prosecutor Patrick Ward and Magistrate Thomas Januzzi worked diligently to prevent the process of appeals – Violating Mrs. Doss Due Process and discriminating against her due to her indigency.**

49.    Mrs. Doss advise both Januzzi and Ward that she would pursue full appellate review at her sentencing held on February 29, 2023. Januzzi stated that Mrs. Doss charges carried no possibility of a jail term, a statement that defense counsel challenged, and Januzzi became visibly upset and asked defense counsel why he questioned the assertion. Defense counsel questioned the assertion because the charges Mrs. Doss was charged with constituted a sixty-day jail term. Januzzi also stated he did not check if Mrs. Doss had any prior criminal record but suspended the jail term without those facts. Mrs. Doss' jail term was ultimately suspended to prevent Mrs. Doss from a constitutional right to appointed appellate counsel for a direct appeal without which Januzzi knew she'd have no means to file an appeal to challenge her conviction due to her indigency.  Defense counsel filed a timely notice of appeal with a request for appellate counsel affidavit of Mrs. Doss indigency, and preparation for a transcript of prior proceedings, required for full appellate review.

50.    Thomas Januzzi immediately denied Mrs. Doss motion for appellate appointed counsel, erroneously relying upon a definition that an indigent defendant has no constitutional right to court-appointed counsel when a criminal prosecution carries no possibility of incarceration.

The Sixth Amendment to the United States Constitution, and Section 10, Article 1 of the Ohio Constitution guarantee the right to assistance of counsel in **all** criminal prosecutions and extends to first appeal after conviction. The *trial court abused its discretion by depriving an indigent defendant of the right to effective assistance of counsel guaranteed by the Due Process and equal protection Clause of the Fourteenth Amendment. See Evitts v. Lucey, 469 U.S. 387(1985). The supreme court held that The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. Pp. 469 U. S. 391-405.*

"The right to assistance of court-appointed counsel in criminal cases is a factual issue in Ohio that does not necessarily depend on the defendant's indigency or whether he or she should be able to employ counsel, but on whether, in fact, the defendant is unable to employ counsel." See State v. Tymcio at 45; State v. McLean, 87 Ohio App.3d 392, 395, 622 N.E.2d 402 (1993)."

51.    *Furthermore, the constitution mandates equal protection of individuals irrespective of poverty and criminal offense. The Supreme court held that the denial of counsel for indigent defendants on appeal was unconstitutional and impoverished defendants contesting an initial appeal cannot be denied legal representation. See* Douglas v. California, 372 U.S. 353 (1963.) Denial of counsel to indigents on first appeal as of right amounts to discrimination against the poor in violation of the Fourteenth Amendment. The sixth amendment right to counsel is a right that attaches in **all** criminal prosecutions. The fourteenth amendment due process and equal protection clause requires that counsel be appointed, extending to the first appeal as of right. See Griffin V. Illinois, 351 U.S. 12, 18-19 (1956.) Indigent defendants have a right to appointment of counsel for a direct appeal of conviction in state courts, see *State v. Buell*, 70 Ohio St. 3d 1211, 1994-Ohio-475. "(T)he right to appointed counsel extends to the first appeal as of right, and no further." See *Pennsylvania v. Finley* (1987), 481 U.S. 551, 555.

52.    The determination of the trial court in this regard abused its discretion beyond an error of law or judgment; the court's attitude was unreasonable, arbitrary and unconscionable. State v. Clark, 71 Ohio St.3d 466, 470, 644 N.E.2d 331, 335 (1994); State v. Moreland, 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898 (1990); State v. Adams, 62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149 (1980.) Although mentioned above, appellant reiterates, "[t]he right to the assistance of court-appointed counsel in a criminal case turns upon the inability to obtain counsel. The entitlement depends, not upon whether the accused ought to be able to employ counsel, but whether he is in fact 'unable to employ counsel.'" Tymcio, supra, paragraph one of

the syllabuses. A defendant still has the right to appointed counsel "even upon a finding that he was not indigent if he was, in fact, actually unable to obtain counsel for another reason." State v. Purnhagen, 4th Dist. No. 93-CA-551, 1994 WL 59263, FN3; relying on State v. Tymcio at ¶ 39.

**Prosecutor Patrick Ward Requested Mrs. Doss motion for transcript at states expense be denied – Court denies motion - Violating Mrs. Doss Due Process and discriminating against her due to her indigency.**

53.   In Mrs. Doss' request for preparation of transcripts at the states expense, she stated the reason she needed the record was for full appellate review. The state asserted in its reply to the motion that the Mrs. Doss listed no legal basis for why she is entitled to the record. The court then denied the motion. The state erred in its assertion that the burden to show the need for transcripts of proceedings requested by an indigent defendant is on the indigent defendant, although Mrs. Doss did indeed state that the production of transcripts was necessary for an effective appeal. In any case the burden is on the state to show that a transcript of prior proceedings requested by an indigent defendant is not needed for an effective defense or appeal, which the state failed to do. The court had already declared Mrs. Doss as indigent but still denied the petition for transcripts of prior proceedings at the state's expense.

54.   Ordinarily it is assumed that a transcript requested for an appeal would be valuable to a defendant without requiring a showing of need tailored to facts of the case. Regardless, the state failed to show that the transcript wasn't valuable to the defendant in connection with the appeal for which it was sought. The state also failed to disclose if there were alternative devices readily available that would fulfill the same functions as a transcript. ( *Britt* v. *North Carolina*, 404 U.S. 226, and *Mayer* v. *Chicago*, 404 U.S. 189, followed.) The appellant contends that her due process and equal protection rights were violated.

55.    In Griffin v Illinois, 351 U.S. 12 (1956) The supreme court ruled that denying indigent defendants access to appellate review violates the fourteenth Amendments due process and Equal protection clauses. This right gives every person convicted at criminal trial a right of review by writ of error; but a full direct appellate review can be had only by furnishing the appellate court with a report of the trial proceedings, certified by the trial judge.

56.    In Mayer v. City of Chicago and Britt v. North Carolina' the Supreme Court undertook to clarify the standard to be applied in granting free transcripts to indigent defendants. The Court disapproved of the state court denial of a transcript in Mayer. In Mayer, appellant was convicted in state court of the non-felony offenses of disorderly conduct and interference with a Police officer, and was fined $250 for each offense. The trial court denied his petition for a free transcript to support an appeal, 4 pointing out that Illinois Supreme Court Rule 607(b) authorized such requests only in felony cases. The state supreme court denied a similar petition. Mayer appealed directly to the United States Supreme Court, challenging the constitutionality of the limitation of the rule to felony 1404 U.S. 189 (1971). 2 404 U.S. 226 (1971).

57.    Defendant Mayer was convicted by a jury in the Circuit Court of Cook County for violations of City of Chicago ordinances which carried maximum penalties of $500 each. 4 Petitioner appealed on the grounds of insufficient evidence for conviction and prosecutorial misconduct. Revd. STAT. Ch. IIOA, §607(b) (1969).

58.    The rule was promulgated under legislative authority to amend code provisions governing criminal appeals, further restricted the availability of a free transcript to indigents convicted of an offense punishable by imprisonment for more than six months. The Supreme Court vacated the order, remanding with directions to the state supreme court where an appeal was already docketed. The Court held the felony limitation an "unreasoned distinction" violative of the due process and equal protection requirements of the fourteenth amendment.

59.     The Court indicated that criminal procedures are also discriminatory when access is denied in cases where the indigent is fined rather than sentenced to a prison term. The issue of whether an indigent has the burden of showing the need for a transcript is also resolved in both Mayer and Britt. The defendant must show neither the usefulness of a transcript nor that alternatives are inadequate. The Court in Mayer held, apart from the felony limitation, that the denial of the motion for a free transcript constituted constitutional error because the state order denying the transcript might be read to require that the petitioner shoulder the burden of showing inadequate alternatives. The Court was similarly explicit in Britt: "We agree with the dissenters that there would be serious doubts about the decision below if it rested on petitioner's failure to specify how the transcript might have been useful to him."

60.     The Court established its opinion in Draper as a key source for interpreting Griffin, and Brit, approved an alternative to a complete transcript. Considered together the decisions emphasize that the severity of an offense is irrelevant to transcript need. After Mayer's fine for municipal ordinance violations the Court found error in the denial.

61.     In *Griffin*, the United States Supreme Court reviewed an Illinois statute which required a bill of exceptions to be prepared to obtain full appellate review of alleged errors. The same applies in this case, appellant's initial appeal was denied on the basis that the court of appeals had no transcript of prior proceedings in accordance with Ohio Loc. App R. 9 to complete appellate review, because the trial court denied the petition for the preparation and production of transcripts at the states expense. The supreme court ruled that in a criminal case, the state must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal. See State v. Arrington (1975), 42 Ohio St. 2d 114.

62.     The defendants knew that the transcript of the trial would have been essential for both full appellate review of the trial court's alleged errors and impeaching the credibility of the State's witnesses.

> As the Supreme Court previously noted in Ball v. State, 974 So. 2d 1044 No. CR-05-0941. Alabama Supreme Court,
>
> "There can be no doubt that the State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal. The question here is whether the state court properly determined that the transcript requested in this case was not needed for an effective defense.
>
> In prior cases involving an indigent defendant's claim of right to a free transcript, this Court has identified two factors that are relevant to the determination of need: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript. We agree with the dissenters that there would be serious doubts about the decision below if it rested on petitioner's failure to specify how the transcript might have been useful to him. Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case. As Mr. Justice Douglas makes clear, even in the absence of specific allegations it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to the defendant in at least two ways: as a discovery device in preparation for trial, and as a tool at the trial itself for the impeachment of prosecution witnesses. A defendant who claims the right to a free transcript does not, under our cases, bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight."

**Destruction and/or withholding of records – The City of Amherst Negligence**

63. July 29, 2023, September 8, 2023, September 9, 2023, and September 15, 2023, records show a patten of police harassment, misconduct, intimidation, discrimination, and retaliation by the APD. Defendant, Alten September 9, interaction establishing with Mrs. Doss her right to preach with amplification, and their clear intention to conspire to have her arrested. This direct statement by the police's sergeant, interaction—*obtained before Defendants arrested and prosecuted Mrs. Doss*—destroyed any alternative bases of probable cause Amherst police may have conceivably had to arrest Mrs. Doss *and the crimes they conspired to commit and committed on body audio before, during, and after the arrest of Mrs. Doss.* Still, the city of Amherst maliciously prosecuted Mrs. Doss in retaliation of her exercising her First Amendment rights and her intent to pursue litigation for them depriving her of and violating those rights.

64. Defendant City of Amherst failed to provide adequate training to its officers on clearly established First, Fourth Amendment and other constitutional rights, including the need to not arrest or prosecute anyone for a law that a controlling court like the Supreme Court of Ohio has already declared a constitutional right and any law, ordinance, statute, or regulation in conflict is void, respect for and comprehension of the rule of law, the importance of not prosecuting someone when there is no probable cause, the importance of officers not depriving an individual of a right in their official capacity, the difference in freedom "of" religion and "from" religion, and not retaliate against citizens who seek redress when law enforcement officials violate their rights.

65. Chief of Police Mark Cawthon, a final decisionmaker, authorized and implemented the policy decision to arrest, charge, and prosecute Plaintiff, and delegated decision-making to Defendant Podrosky and others, thus empowering them to act unconstitutionally on the City's behalf.

**Defendants anticipated litigation yet destroyed or hid relevant documentation –**
**Criminally prosecuted in retaliation for intent to pursue redress.**

66.     In the days just after Mrs. Doss's arrest, Defendant City of Amherst's law director advised APD

records officers to withhold certain records from personal devices and other documentation via email, that

would further expose gross police misconduct within the department. Mrs. Doss served APD with a

notice of intent to sue and Mrs. Doss was given some records while the others were withheld, heavily

redacted, or destroyed.


67.     The criminal case involved questioning regarding the impending civil litigation by the state and the

outcome of the criminal case was based solely on Mrs. Doss intent to pursue civil litigation. When Mrs.

Doss declined to sign a release to not pursue legal action in exchange for a dismissal in the criminal case,

the state moved forward with its malicious prosecution.

68.     After the court found Mrs. Doss not guilty on two of four charges, she is now pursuing a delayed

appeal to the supreme court, as the trial court erred in denying an indigent defendant appellate appointed

counsel for direct appeal as of right and transcripts of prior proceedings at the states expense. Because the

criminal case is ongoing, the plaintiff filed to preserve the statute of limitations and request a stay until the

criminal case is complete, and this case is not yet ready to be litigated.


**Defendants destroyed Mr. Doss's life and reputation.**

69.     Unsurprisingly, this incident has severely impacted Mrs. Doss. Aside from the intrinsic violation of

her constitutional rights and liberty interests, Mrs. Doss—a single mom, who worked extremely hard in

obtaining her business degree, law-abiding citizen, and resident of Lorain also saw all her hard work go

down the drain, being recently denied for several positions, her career has and is being impacted due to

APD misconduct. She is struggling to provide for my children. She may have to bear the expense of hiring

attorneys to prepare for trial and the civil proceedings. She could not even secure work delivering food,

having been recently denied two jobs where a degree was not even required due to her new criminal

record. Thanks to Amherst police officers forcing her unwarranted embarrassing stay in detention in the County jail, her embarrassing arrest photo being easily accessible to the public destroying her reputation in ministry and the community. It has been extremely hard for Mrs. Doss to care for her children, she cannot secure work because of her bogus record, destroying any opportunities with potential employers in positions where she worked hard to obtain a degree.

70.    Mrs. Doss attempted to return to school before the criminal proceedings, contemplating pursuing a bachelor's degree in business with the university partnerships at LCCC, but quickly fail behind due to the stress of the criminal proceedings and the intentional emotional stress that all of Defendants inflicted on her, filing false charges, and deliberately leaving her no means appellate review to challenge those false charges and their misconduct and clear her name. Mrs. Doss started off well but eventually fell behind in March of 2024 after the bogus trial, and eventually fell behind. She is currently re-enrolled but still dealing with the stress left by the defendants.

71.    The Defendant's publicly defamed Mrs. Doss via arrest record is also felt among the Christian and non-Christian community, where she has been accused as a hypocrite criminal, she is discouraged and has since stopped preaching due to the corruption of all the defendants name in herein.

72.    Mrs. Doss continues to feel these legal, reputational, emotional, physical, and financial impacts to this day. She has been sleepless with distress.

# CLAIMS FOR RELIEF

### CLAIM 1

### FOURTH AMENDMENT VIOLATION, 42 U.S.C. § 1983—WRONGFUL ARREST (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

73. Plaintiff incorporates all previous allegations.

74. "It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment."[2]

75. Mrs. Doss had a Fourth and Fourteenth Amendment right to be free from wrongful arrest.

76. Mrs. Doss was preaching the gospel to lost souls in Amherst on the public sidewalk which is a requirement and call in her Christian religion, to go out into all the world and preach the gospel to every creature. Mrs. Doss was obeying that call on September 15, 2023. No officer could have reasonably believed there was probable cause to arrest Mrs. Doss for preaching about the doctrine of hell because they falsified evidence, solicited false statements, and did not previously arrest Mrs. Doss on three previous occasions. Nor was the crime for which the officer was arresting Mrs. Doss existent because it was a protected activity, criminalized by Amherst city and its Police Department.

77. As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

78. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct. The city of Amherst and its police department has received several lawsuits over the last two decades for violating the rights of individuals, most of which involve false arrest, police misconduct, and malicious prosecution, and it has continued in its illegal activities, and has yet to be deterred from engaging in illegal activity and must be punished.

## CLAIM 2

### FALSE ARREST UNDER OHIO LAW (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

79. Plaintiff incorporates all previous allegations.

80. Defendants arrested Mrs. Doss without probable cause, inspired by malice.

81. Defendants knowingly conspired against Mrs. Doss in retaliation for engaging in protected activities in the weeks leading up to her false arrest.

82. Defendants, Podrosky, Grandy, Warner, and Cawthon caused the initiation of the criminal prosecution of Mrs. Doss without probable cause and with malicious intent by creating false information and forwarding it to Defendant, prosecutor Patrick Ward and withheld relevant and material information, thereby the presumption of the prosecutor's independent judgment was overcome.

83. Defendant Cawthorn empowered the individual Defendants to act unconstitutionally on the city's behalf.

84. The deliberate fabrication of evidence denied Mrs. Doss due process right to a fair trial and the fabricated evidence affected the judgment and caused the wrongful conviction of Mrs. Doss."

---

1 *Leonard*, 447 F.3d at 358.

2 *Patrizi v. Huff*, 690 F.3d 459, 464 (6th Cir. 2012) (quoting *Ingram v. City of Columbus*, 185 F.3d 579, 592–93 (6th Cir. 1999)) (**no qualified immunity where police officers unconstitutionally arrested § 1983 plaintiff**).

3 *See, e.g.*, *Devereaux*, 263 F.3d. at 1075 ("the knowing use by the prosecution of perjured testimony in order to secure a criminal conviction violates the Constitution"); *Cole v. Carson*, 802 F.3d 752, 768 (5th Cir.2015) ("a victim of intentional fabrication of evidence by officials is denied due process when he is either convicted or acquitted").

85. As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 3

### FOURTH AMENDMENT VIOLATION, 42 U.S.C. § 1983—MALICIOUS PROSECUTION (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

86. Plaintiff incorporates all previous allegations.

87. Mrs. Doss was criminally prosecuted for a constitutionally protected activity, for which there was no probable cause, in which the defendants invented probable cause before. during, and after the arrest of Mrs. Doss.

88. Defendants, Podrosky, Grandy, Warner, and Cawthon caused the initiation of the criminal prosecution of Mrs. Doss without probable cause and with malicious intent by creating false information and forwarding it to Defendants, prosecutor Patrick Ward and withheld relevant and material information, thereby the presumption of the prosecutor's independent judgment was overcome.

89. Defendants. Cawthorn empowered the individual Defendants to act unconstitutionally on the city' s behalf.

90. Defendants, Podrosky, Warner, and Grandy caused the initiation of the criminal prosecution without probable cause by creating and submitting false information, coercing and soliciting false witness statements, witness tampering and tampering with evidence, and acted with a reckless disregard for the truth.

91. Mrs. Doss suffered a deprivation of her liberty and irreparable harm.

92. As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

93. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 4

### FOURTH AMENDMENT VIOLATION, 42 U.S.C. § 1983—UNLAWFUL SEARCH (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

94. Plaintiff incorporates all previous allegations.

95. Mrs. Doss had a reasonable expectation of privacy in her person. Defendants' search of her persons constituted searches within the meaning of the Fourth Amendment, as applied to the states by the Fourteenth Amendment.

96. Defendants' actions were unreasonable in light of the surrounding circumstances.

97. No probable cause existed to search Mrs. Doss's person nor did she consent to search and seizures.

98. Mrs. Doss suffered humiliation and personal damage from Defendants' unlawful search.

99. Defendants' actions violate the Fourth and Fourteenth Amendments via 42 U.S.C. § 1983.

100. As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendants are liable.

101. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 5

### FOURTH AMENDMENT VIOLATION, 42 U.S.C. § 1983—WRONGFUL DETENTION (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

102. Plaintiff incorporates all previous allegations.

103. Defendants deprived Mrs. Doss of her Fourth Amendment right to be free from unreasonable seizure by detaining her without probable cause and illegally seizing her property.

104. Defendants, Podrosky, Grandy, Warner, and Cawthon caused the initiation of the criminal prosecution of Mrs. Doss without probable cause and with malicious intent by creating false

information and forwarding it to Defendants, prosecutor Patrick Ward and withheld relevant and

material information, thereby the presumption of the prosecutor's independent judgment was

overcome.

105.   Defendants. Cawthorn empowered the individual Defendants to act unconstitutionally on the city' s

behalf.

106.   Defendants, Podrosky, Warner, and Grandy caused the initiation of the criminal prosecution

without probable cause by creating and submitting false information, coercing and soliciting false

witness statements, witness tampering and tampering with evidence, and acted with a reckless disregard

for the truth.

107.   As a direct and proximate result of Defendants' unlawful activity, Plaintiff has suffered and

continues to suffer economic and non-economic damages for which Defendants are liable.

108.   Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and

deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 6

### FABRICATED EVIDENCE - CAUSATION 42 U.S.C. § 1983—WRONFUL CONVICTION (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

109.   Plaintiff incorporates all previous allegations.

110.   Defendants, Podrosky, Grandy, Warner, and Cawthon caused the initiation of the criminal

prosecution of Mrs. Doss without probable cause and with malicious intent by creating false

information and forwarding it to Defendants, prosecutor Patrick Ward and withheld relevant and

material information, thereby the presumption of the prosecutor's independent judgment was

overcome.

111.   Defendants. Cawthorn empowered the individual Defendants to act unconstitutionally on the city' s

behalf.

112.   Defendants, Podrosky, Warner, and Grandy caused the initiation of the criminal prosecution without probable cause by creating and submitting false information, coercing and soliciting false witness statements, witness tampering and tampering with evidence, and acted with a reckless disregard for the truth.

113.   The City's authorized actions, policies, and practices that violate 42 U.S.C. § 1983 and the First, Fourth, Sixth, and Fourteenth Amendments.

114.   As a direct and proximate result of the City's unlawful policy, Plaintiff has suffered and continues to suffer economic and non-economic damages for which the City is liable.

115.   The City's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter the City and others from engaging in this type of unlawful conduct.

### CLAIM 7

### *MONELL* LIABILITY, 42 U.S.C. § 1983—FAILURE TO TRAIN (AGAINST THE CITY OF AMHERST)

116.   Plaintiff incorporates all previous allegations.

117.   "[A] city can be liable under § 1983 for inadequate training of its employees."[6]

118.   The City failed to provide adequate training to its officers on clearly established First, Fourth Amendment, Sixth Amendment, and other constitutional rights, and the need to maintain real evidence.

119.   The City's failure to train its officers displays deliberate indifference to the rights of persons they may encounter.

120.   The City has failed to train its police officers on these basic constitutional issues.

121.   The city is liable under the First, Fourth, Sixth, and Fourteenth Amendments via 42 U.S.C. § 1983.

122.   Defendants' failures with individuals' First, Fourth and Sixth Amendment rights amounts to deliberate indifference to the constitutional violations committed by Defendants against Mrs. Doss.

123. The city knew, or should have known, that its officers mishandle situations and commit constitutional violations routinely. The city has received more than 10 civil right lawsuits for rights violations in the last decade establishing a pattern of misconduct.

124. Still, Defendants failed to train the individual Defendants not to act unconstitutionally.

---

[6] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1969).

125. Defendant's deliberate indifference to Defendant Officers' deprivation of constitutional rights may be considered a policy, practice, or custom of Defendant City of Amherst.

126. As a direct and proximate result of Defendant's failure to train and supervise, which the City endorsed and adopted as its own unwritten municipal policy, Mrs. Doss has suffered and will continue to suffer economic and non-economic damages for which Defendant is liable.

127. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 8

### 42 U.S.C. § 1983—SUPERVISORY LIABILITY (AGAINST DEFENDANTS JAKE PODROSKY, JARED WARNER AND MARK CAWTHON)

128. Plaintiff incorporates all previous allegations.

129. To establish supervisory liability, "a platiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."[7]

130. Defendant Podrosky played an active role in unconstitutional actions and with the approval from Defendant Mark Cawthon falsely arrested Mrs. Doss without probable cause.

131. The culture of approval and acquiescence to unconstitutional officer conduct at the Amherst Police Department goes all the way to the top. Chief Cawthon and his officers believe themselves to be above the rule of law and separation of powers established in the United States and Ohio constitutions.

132.    As a direct and proximate result of Cawthorn and Podrosky's failure to supervise, which the City endorsed and adopted as its own unwritten municipal policy, Mrs. Doss has suffered and will continue to suffer economic and non-economic damages for which Defendant is liable.   Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 9

### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.45—INTERFERENCE WITH CIVIL RIGHTS (AGAINST ALL INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES)

133.    Plaintiff incorporates all previous allegations.

134.    Under Ohio Rev. Code § 2921.45(A), "[n]o public servant, under color of the public servant's office, employment, or authority, shall knowingly deprive, or conspire or attempt to deprive any person of a constitutional or statutory right."

135.    Under Ohio Rev. Code § 2901.22(B), "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high

_____

probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."

136.    Under Ohio Rev. Code § 2307.60, anyone injured in person or property by a criminal act may recover full damages in a civil action. Violations of Ohio Rev. Code §§ 2921.45(A) are criminal acts under § 2921.45(B).

137. The individual Defendants, Amherst police officers, are public servants. As detailed above, they acted under color of office, employment, and authority to knowingly deprive Mrs. Doss of her civil rights, including her constitutional rights under the First, Fourth, Sixth, and Fourteenth Amendments to the U.S. Constitution, they intentionally falsified reports, statements, and evidence to have Mrs. Doss Criminally prosecuted, when they knew she had committed no crime.

138. As a direct and proximate result of Defendant's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant ais liable. 132. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 10
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.44(E)—DERELICTION OF DUTY (AGAINST ALL INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES)

139. Plaintiff incorporates all previous allegations.

140. Under Ohio Rev. Code § 2921.44(E), "[n]o public servant shall recklessly fail to perform a duty expressly imposed by law with respect to the public servant's office, or recklessly do any act expressly forbidden by law with respect to the public servant's office."

141. The individual Defendants recklessly failed to perform duties expressly imposed on him by law, including providing full and complete information in their reports, charge, and affidavits; adequately establishing legal grounds for questioning, arresting, searching, and detaining Mrs. Doss providing full and accurate information to prosecutors and judicial officers; training and supervising others properly; and abstaining from violating Fourth and Sixth Amendment constitutional rights.

142. As a direct and proximate result of Defendant's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant ais liable.

Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 11
### ATTEMPTING TO INFLUENCE A PUBLIC SERVANT WITH FALSE WRITINGS UNDER OHIO REV. CODE § 2921.03(A) AND (C), CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE § 2307.60(A)(1) AND 2921.03(A), AND COMPLICITY UNDER § 2923.03 (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

143.  Plaintiff incorporates all previous allegations.

144.  Under Ohio Rev. Code § 2921.03(A) "[n]o person shall attempt to influence . . . a public servant . . . by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner."

145.  Ohio Rev. Code § 2921.03(C) provides a civil cause of action for violations of § 2921.03(A), and for the recovery of attorney fees and other expenses in bringing the civil claim. 141. Under Ohio Rev. Code § 2307.60(A)(1), "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action," including attorney fees and punitive damages.

116.  Defendant Warner, under the supervision of Defendants Alten, Podrosky and Cawthorn, and in complicity with other individual Defendants, filed or submitted false writings in a reckless manner in an attempt to influence public servants to prosecute and convict Mrs. Doss and preside over such a travesty. Those writings included the complaints against Mrs. Doss for supposedly preaching too loud and blocking entrance to bar patrons— when Defendants *knew* that this was bogus because Mrs. Doss was not arrested in three previous encounters, and Defendants falsified evidence to falsely arrest Mrs. Doss.

117.  As a direct and proximate result of Defendant's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant ais liable. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

118. These Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 12
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.11—PERJURY, AND R.C. 2923.03—COMPLICITY
### (AGAINST DEFENDANTS ALTEN, PODROSKY AND WARNER)

119. Plaintiff incorporates all previous allegations.

120. Under Ohio Rev. Code § 2307.60(A)(1), "[a]nyone injured in person or property by a criminal act has, and may recover full damages in, a civil action," including attorney fees and punitive damages.

121. Under Ohio Rev. Code § 2921.11(A), "[n]o person, in any official proceeding, shall knowingly make a false statement under oath or affirmation, or knowingly swear or affirm the truth of a false statement previously made, when either statement is material."

122. Defendant Podrosky and Warner knowingly made and coerced false statements under oath or affirmation, including in affidavits in support of complaints, accusing Mrs. Doss of violating an ordinance and disorderly conduct for a constitutionally protected activity.

123. Defendant Prodrosky and Warner were complicit, by, among other things, signing off on Defendant Warner's false statements.

124. Those false statements were material to the prosecution of Mrs. Doss.

125. As a direct and proximate result of Defendant's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant ais liable.

Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

126. These Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 13

### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.12—TAMPERING WITH EVIDENCE (AGAINST DEFENDANTS PODROSKY, WARNER, GRANDY)

127.    Plaintiff incorporates all previous allegations.

128.    Ohio Rev. Code § 2921.12 provides that no person, knowing official proceedings are likely to be

initiated, shall (1) "[a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to

impair its value or availability as evidence in such proceeding or investigation," or (2) "[m]ake, present,

or use any record, document, or thing, knowing it to be false and with purpose to mislead a public

official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the

outcome of any such proceeding or investigation."

129.    The named Defendants knew official proceedings were imminent, including the prosecution

of Mrs. Doss and likely civil litigation.

130.    The named Defendants knowingly presented false and misleading records to mislead public

officials, including by presenting a false complaint to initiate criminal prosecution.

131.    The named Defendants knowingly altered, destroyed, concealed, or withheld documentation of their

interactions between each other during Mrs. Doss arrest and witness interviews to mislead the court

into believing their allegations, corrupt the outcome of the prosecution, and interfere with her ability to

collect civil damages for their misconduct.

132.    As a direct and proximate result of these Defendants' unlawful activity, Plaintiff has suffered and

continues to suffer economic and non-economic damages for which Defendants are liable.

133.    These Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to

punish and deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 14

### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE §§ 2307.60 (A)(1) AND 2921.13—FALSIFICATION (AGAINST DEFENDANT PODROSY AND WARNER)

134.  Plaintiff incorporates all previous allegations.

135.  Criminal statute Ohio Rev. Code § 2921.13 prohibits any person from making or swearing to false statements.

136.  Defendant's Podrosky and Warner knowingly made and coerced false statements in official proceedings, including his perjured affidavit, with the purpose to incriminate Mrs. Doss, and witness statements with a purpose to mislead public officials in the course of their official duties.

137.  As a direct and proximate result of Defendant's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant ais liable.

138.  Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 15

### SPOLIATION (AGAINST DEFENDANT CITY OF AMHERST)

139.  Plaintiff incorporate all previous allegations.

140.  Litigation involving Defendants was probable even in the moments and days after Mrs. Doss was arrested, charged, and prosecuted in such a dubious fashion. Litigation involving Defendants was even more probable when Mrs. Doss retrieved the body audio/footage from Podrosky and Grandy incriminating the officers, and witnesses involved.

Police records relating to Mrs. Doss arrest and prosecution existed at some point.    Yet the City—by and through the very same assistant law director, Patrick Ward who served as prosecutor in Mrs. Doss's criminal case—claimed to Mrs. Doss prospective legal representation that their personal device records during the time of Mrs. Doss arrest were redacted because they were not

relevant to Mrs. Doss arrest despite the redacted messages occurring before, during, and shortly after Mrs. Doss arrest.

If this is true, this leads to the logical conclusion that Defendant City of Amherst destroyed and withheld many records related to Mrs. Doss, including text messages from personal devices of police communications regarding Mrs. Doss's arrest and prosecution.

Their purpose in destroying those records was to disrupt Mrs. Doss's case against them.

## CLAIM 16

### DESTRUCTION OF PUBLIC RECORDS UNDER OHIO REV. CODE § 149.351 (AGAINST DEFENDANT CITY OF AMHERST)

141.  Plaintiff incorporates all previous allegations.

142.  Records may not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of except under a records-retention schedule approved by a records commission, the state auditor, and the Ohio Historical Society.

143.  Through her public-records requests on September 16, 2023, Mrs. Doss sought to access papers, videos, electronic data, and other records regarding her arrest and prosecution.

144.       Defendant City of Amherst failed to produce many records Mrs. Doss requested, as described above.

145.  That failure was attributable—at least in part—to Defendant City of Amherst's failure to retain the records Mrs. Doss requested.

146.  When Mrs. Doss requested those records, the City's failure to retain those records was not permitted by its records-retention schedule, including, but not limited to, a requirement to retain


"[r]ecord of all items seized by the police department" for six years, incident reports related to felonies and misdemeanors for six years, "records of calls requiring response by an officer" for 10

years, "[l]isting of all charges issued by officer and to whom they were issued" for three years, expunged records for three years, and fingerprints from arrestees for 50 years.

Mrs. Doss commences this civil action for injunctive relief to compel compliance with Ohio Rev. Code § 149.351(A), for her reasonable attorney fees incurred, and for the civil forfeiture of $1,000 per violation for the destruction of witness-interview videos and other documents.

147.  As a direct and proximate result of Defendant's unlawful activity, Plaintiff has suffered and continues to suffer economic and non-economic damages for which Defendant ais liable.

148.  Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

### CLAIM 17
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AGAINST DEFENDANTS ALTEN, CAWTHON, PODROSKY, WARNER, AND GRANDY)

149.  Plaintiff incorporates the above allegations.

150.  In conducting themselves as they did, the named Defendants intended to cause emotional distress and knew that their conduct would cause severe emotional distress to Mrs. Doss.

151.  The named Defendants engaged in extreme and outrageous conduct by, among other things:

   a.  Charging and causing Mrs. Doss to be charged with a crime when they knew they coerced fabricated evidence for.

   b.  Charging and causing Mrs. Doss to be charged with a non-existent crime that the Supreme Court of Ohio had validated as constitutionally protected.

152.  The named Defendants' extreme and outrageous conduct continued over weeks as they continued to support the malicious prosecution.

153.  The named Defendants' behavior went beyond all possible bounds of decency and was such that it could be considered intolerable in civilized society.

As a direct and proximate result of their extreme and outrageous conduct, Plaintiff has suffered and will continue to suffer mental anguish of so serious a nature that no reasonable person could be expected to endure it and for which Defendants are liable. Plaintiff is entitled to recover damages for the intentional infliction of emotional distress under Ohio common law, as well as attorney fees and costs, and seeks punitive or exemplary damages based on the named Defendants' ill-willed, malicious, and wanton conduct.

## CLAIM 18

### FIRST AMENDMENT VIOLATION, 42 U.S.C. § 1983—RETALITORY PROSECUTION (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

154.  Plaintiff incorporates all previous allegations.

155.  Mrs. Doss had a First Amendment right to be free from wrongful

Arrest for public speech that did not constitute fighting words, press and assembly.

156.  Mrs. Doss was arrested based on the reactions of the listeners of her free speech and the misconduct of APD.

157.  "[T]he constitutional tort of malicious prosecution . . . is actionable in our circuit as a First

Amendment violation under § 1983."[3]

158.  Mrs. Doss was criminally prosecuted and convicted due to Defendants misconduct.

159.  The Free Speech Clause of the First Amendment to the United States Constitution,

160.  as applied to the states by the Fourteenth Amendment, prohibits the State from abridging

Mrs. Doss, freedom of speech.

161.  And there was no probable cause for the arrest and criminal prosecution of Mrs. Doss.

Defendants made, influenced, or participated in the decision to prosecute Mr. Doss, including by falsifying evidence, drafting and submitting misleading investigative reports coercing false witness statements/witness tampering, and a complaint, omitting key and material facts.

162.  The named Defendants engaged in extreme and outrageous conduct by, among other things:

Charging and causing Mrs. Doss to be charged with a crime when they knew they coerced false

witness statements and falsified evidence.

Charging and causing Mrs. Doss to be charged with a non-existent crime that the

Supreme Court of Ohio had validated it as constitutional.

163.  The prohibitions and restrictions on the religious gathering of Mrs. Doss and the APD ordering

Mrs. Doss to leave and stop preaching on go pro footage, violated the Establishment Clause because

the city of Amherst thereby dictates the manner in which Christians and religious ministries must

worship, and whether they may worship at all, and whether they may engage in religious events,

gatherings, and activities.

164.  The named Defendants' extreme and outrageous conduct continued over weeks as they continued

to support the malicious prosecution.

165.  The named Defendants' behavior went beyond all possible bounds of decency and was such that it

could be considered intolerable in civilized society.

As a direct and proximate result of their extreme and outrageous conduct, Plaintiff has suffered and

will continue to suffer mental anguish of so serious a nature that no reasonable person could be

expected to endure it and for which Defendants are liable. Plaintiff is entitled to recover damages

for the intentional infliction of emotional distress under Ohio common law, as well as attorney fees

and costs, and seeks punitive or exemplary damages based on the named Defendants' ill-willed,

malicious, and wanton conduct.

## CLAIM 19

### VIOLATION, 42 U.S.C. § 1985(3) 1983 (CONSPIRARCY TO DEPRIVE RIGHTS) (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)

166.  Defendants conspired together to deprive Plaintiff of her civil rights in violation of 42 U.S.C. § 1985(3).

167.  The conspiracy included those involved with law enforcement actions in and around Cedar Pub on September 15, 2023, including Cedar Pub owner, Pamela Kregar, Defendants Warner, and Podrosky.

168.  The conspirators engaged in overt acts in furtherance of the conspiracy, including but not limited to coercing bar patrons around Cedar Pub to lie about Mrs. Doss' actions to stop and violate her First Amendment rights because Defendants knew they had no probable cause to arrest Mrs. Doss.

169.  This conspiracy targeted religious exercise and other protected rights all of which is a protected class under 42 U.S.C. §1985(3)

170.  The conspiracy targeted Plaintiff protected First Amendment activities. because Defendants held animus towards Plaintiff viewpoints and her expressing her intent to a redress of grievance. The unlawful actions of the conspirators directly and unlawfully interfered with these activities.

171.  Defendants, Magistrate Januzzi and Patrick ward intentionally denied an indigent defendant's motions for appointed counsel for a direct appeal as of right and transcripts of prior proceedings with the intent to unconstitutionally interfere with Mrs. Doss right to appeal her conviction, preventing her access to a fair trial violating due process and equal protection laws to a fair trial.

172.  APD told Mrs. Doss's husband that he would not have arrested her, if Mrs. Doss had not threatened him with civil litigation if her rights were violated.

173.  In Mrs. Doss Go pro recording, Defendant Alten told Mrs. Doss on September 8, 2023, that he would coordinate with his law director before arresting her, so that she would know what she would be charged with for exercising her first amendment rights.

174. The named Defendants' extreme and outrageous conduct continued over weeks as they continued to support the malicious prosecution.

175. The named Defendants' behavior went beyond all possible bounds of decency and was such that it could be considered intolerable in civilized society.

As a direct and proximate result of their extreme and outrageous conduct, Plaintiff has suffered and will continue to suffer mental anguish of so serious a nature that no reasonable person could be expected to endure it and for which Defendants are liable. Plaintiff is entitled to recover damages for the intentional infliction of emotional distress under Ohio common law, as well as attorney fees and costs, and seeks punitive or exemplary damages based on the named Defendants' ill-willed, malicious, and wanton conduct.

### CLAIM 20

**FIRST AMENDMENT RETALIATION IN VIOLATION OF § 1983 FREE SPEECH, RELGION, PRESS AND RIGHT TO PETITION (AGAINST ALL DEFENDANTS, AND AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL AND PERSONAL CAPACITIES)**

176. Plaintiff incorporates the above allegations.

177. 42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

178. Defendants are "persons" within the meaning of 42 U.S.C. § 1983. 236. Amherst City is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the municipality caused the violations of Plaintiff constitutional rights, and/or because city officials with final policymaking authority violated Plaintiffs' constitutional rights. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). 237.

179. Amherst City Police Department is liable under 42 U.S.C. § 1983 because a custom, practice, or policy of the department caused the violations of Plaintiff's constitutional rights, and/or because city officials with final policymaking authority violated Plaintiffs' constitutional rights. Mrs. Doss engaged in protected activity when she exercised his First Amendment rights to free speech on matters of

religion, Defendants denied Mrs. Doss her constitutional right to free speech, religion, the exercise thereof and assembly and retaliated against her for the exercise of her right, as guaranteed by the First Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

180. Mrs. Doss was arrested, among other reasons because she threatened civil.

181. The named Defendants' extreme and outrageous conduct continued over weeks as they continued to support the malicious prosecution.

182. The named Defendants' behavior went beyond all possible bounds of decency and was such that it could be considered intolerable in civilized society.

As a direct and proximate result of their extreme and outrageous conduct, Plaintiff has suffered and will continue to suffer mental anguish of so serious a nature that no reasonable person could be expected to endure it and for which Defendants are liable. Plaintiff is entitled to recover damages for the intentional infliction of emotional distress under Ohio common law, as well as attorney fees and costs, and seeks punitive or exemplary damages based on the named Defendants' ill-willed, malicious, and wanton conduct.

## Civil Rights Lawsuits Filed Against Defendants (City of Amherst & APD)

Hoepf v. City of Amherst
Case # 1:22-cv-153
Year Filed: 2022
US District Court for the Northern District of Ohio. Cause of Action: 42 U.S.C. § 1983 Civil Rights Act. Reasons Filed: False arrest, Malicious prosecution, false imprisonment.

Donald Margolis Vs city of Amherst.
Case # 1:2023cv01648.
Year filed: 2023
US District Court for the Northern District of Ohio.
Cause of Action: 42 U.S.C. § 1983 Civil Rights Act. Reasons Filed: False arrest, Malicious prosecution, false imprisonment, failure to train, failure to supervise, destruction of records.

Johnson v. Officer Troy Donaldson (Amherst PD)
Case # 1:06CV1760. Case # 07CA009140
Year Filed: 2006 & 2007

US District Court for the Northern District of Ohio. Cause of Action: 42 U.S.C. § 1983 Civil Rights Act. Reasons Filed: False arrest, Malicious prosecution, false imprisonment, conspire to injure, oppress, threaten, or intimidate.

State v. Seals
Case # 21CA011748
Year Filed: 2022
Court of Appeals of Ohio, Ninth District, Lorain Court of Appeals of Ohio, Ninth District, Lorain

State v. Torgerson
Case # 06CA008917
Year Filed: 2007
Court of Appeals of Ohio, Ninth District, Lorain County

State v. Woody
Case # 14CA010679
Year Filed: 2016
STATE OF OHIO COUNTY OF LORAIN IN THE COURT OF APPEALS NINTH JUDICIAL DISTRICT
State v. White
Case # 11CA010005
Year Filed: 2011
COURT OF APPEALS NINTH JUDICIAL DISTRICT STATE OF OHIO COUNTY OF LORAIN

State v. Pippert
Case # 14CA010698
Year Filed: 2016
STATE OF OHIO COUNTY OF LORAIN IN THE COURT OF APPEALS NINTH JUDICIAL DISTRICT

State v. Cousino
Case # 15CA010870 Case # 15CA010871
Year Filed: 2016
STATE OF OHIO COUNTY OF LORAIN IN THE COURT OF APPEALS NINTH JUDICIAL DISTRICT

### PRAYER FOR RELIEF

For the reasons stated above and the list of previous civil rights violations, Plaintiff respectfully requests the following relief from the Court:

A.  Declare that Defendants' acts and conduct constitute violations of federal and state law and the United States Constitution.

B.  Enter judgment in Mrs. Doss's favor on all claims for relief.

C.  Award Mrs. Doss full compensatory damages, economic and non-economic, including, but not limited to, damages for pain and suffering, mental anguish, emotional distress, humiliation, lost property, and inconvenience that he has suffered and is reasonably certain to suffer in the future.

D.  Award Mrs. Doss punitive damages as appropriate for all intentional and malicious violations of federal and state law and constitutional rights.

E.  Award prejudgment and post-judgment interest at the highest lawful rate.

F.  Award Mrs. Doss her reasonable attorney fees, expert fees, and all other costs and expenses of this suit.

G.  Award all other relief in law or equity to which Mrs. Doss is entitled and that the Court deems equitable, just, or proper.

H.  Require three-year monitoring of all law enforcement activity by all Defendants to prevent any further religious discrimination, retaliation, and misconduct including the hiring and training of new and current officers.

I.  Issue a permanent injunction that (i) prohibits Defendants, their officers, agents, employees, and successors from engaging in the discriminatory practices complained of herein.

J.  Defendants qualified immunities be revoked and abolished as their actions were intention, egregious, inspired by malice; and resulted in the retaliatory prosecution and wrongful conviction of Mrs. Doss.

### JURY DEMAND

Plaintiff Jasmine Doss demands a trial by jury on all issues within this Complaint.

Dated:                                                        Respectfully submitted,