IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JASMINE DOSS, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF AMHERST, OHIO, *et al.*, <br><br> Defendants. | CASE NO. 1:24-cv-1622 <br><br> DISTRICT JUDGE <br> CHARLES ESQUE FLEMING <br><br> MAGISTRATE JUDGE <br> JAMES E. GRIMES JR. <br><br> **MEMORANDUM OPINION & ORDER** |

Pro se Plaintiff Jasmine Doss moves the Court under 28 U.S.C. § 455 for recusal. *See* Doc. 55. As is explained below, Doss's motion is denied.

*Background*

By way of context, in September 2024, Doss filed this civil rights action alleging claims against the City of Amherst and several Amherst police officers.[1] Doc. 1. In November 2024, the Court referred this matter to the assigned Magistrate Judge for general pretrial supervision and resolution of non-dispositive motions. Doc. 5. Defendants were served in December 2024. Docs. 9–17. In early February 2025, the Court scheduled a case management conference to take place in-person, on March 14, 2025. Doc. 24.

---

[1] The complaint also named as Defendants a municipal court judge—mistakenly identified in the complaint as a municipal magistrate—and Amherst's law director. Doc. 1, at 4. But these individuals were later dropped as defendants. *See* Doc. 40, at 1.

Doss later filed an unopposed motion to continue the case management conference. Doc. 32. In support of this motion, Doss cited her "unavailability … due to a conflicting schedule in another court case." *Id*. at 1. The Court granted the motion, reset the conference for April 1, 2025, and explained that "[f]urther extensions will be disfavored." Non-Document Order (Mar. 6, 2025).

Before the case management conference, Defendants' counsel filed the parties' report of their planning meeting. Doc. 34; *see* Fed. R. Civ. P. 26(f). In their report, the parties proposed that the Court set July 1, 2025, as the cut-off for fact discovery. Doc. 34, at 3.

Doss "was unexpectedly unable to attend" the April 1, 2025 case management conference "in-person and [instead] participated by telephone." Doc. 37. During the conference, the Court granted Doss's motion to file an amended complaint and, with input from the parties, established a case schedule. *Id*.

After the case management conference, the Court issued a case management conference plan. Doc. 38. Consistent with the parties' recommendation, the Court set July 1, 2025, as the cut-off date for fact discovery. *Id*. at 2.

The Court also provided instructions about the manner in which it would handle discovery disputes. *Id*. at 3. As is relevant to this order, the Court provided that:

> [n]o motion to compel, motion for protective order, or motion for sanctions is permitted unless the parties

> have undertaken in good faith to resolve their discovery dispute and, if unable to do so, have been instructed by the Court to file a motion.

*Id*. The Court further instructed that "[b]efore presenting a discovery dispute to the Court, the moving party … must first confer in good faith with any adverse party to resolve the dispute." *Id*. The Court explained that "[a]n exchange of letters or emails alone [would] not satisfy this requirement." *Id*.

Finally, the Court instructed:

> Notifying the Court of the dispute. If, after complying with the meet-and-confer requirement, counsel are unable to resolve a dispute, the party raising the dispute must file via ECF a notice *briefly* stating the nature of the dispute. The notice must contain a certification that the required in-person or telephonic conference took place between counsel for the relevant parties and, in particular, must state: (1) the date and time of such conference; (2) the approximate duration of the conference; (3) the names of the attorneys who participated in the conference; (4) the opposing party's position as to each issue being raised (as stated by the opposing party during the in-person or telephone conference); and (5) that the moving party informed the opposing party during the conference that the moving party believed the parties to be at an impasse and that the moving party would be contacting the Court under this paragraph. Simply attaching copies of correspondence between counsel does not satisfy these requirements.

*Id*. at 3–4. The docket reveals that neither party sought clarification of these instructions.

The Court held a video status conference on May 13, 2025. *See* Doc. 40. During the conference, "Doss requested a 30-day extension of the fact discovery

3

cutoff date, which defendants did not oppose." *Id*. at 1. The Court granted the motion, setting August 1, 2025, as the new cut-off date for fact discovery. *Id*. The Court also scheduled "a follow-up status conference by video for July 18, 2025." *Id*.

On June 13, 2025, Doss filed a "motion to compel compliance with rules of court." Doc. 41. In part, Doss asserted that Defendants had improperly served discovery requests on her by email, rather than by mail. *Id*. at 1–2. In response, the Court ordered that to the extent Doss's motion raised a discovery dispute, it was denied for noncompliance with the case management plan order quoted above. Non-Document Order (June 18, 2025). In doing so, the Court referenced the pages of the case management plan order containing the instructions about how to raise a discovery dispute. *Id*. The Court also ordered Defendants to respond to Doss's assertion that they had not properly served her. *Id*. After considering Defendants' response, the Court noted that Defendants had not properly served Doss with their papers. Doc. 42, at 2. The Court also observed that the dispute had since been resolved by Defendants serving Doss by mail. Doc. 43, at 2. The Court gave Doss additional time to respond to the Defendants' requests.[2] *Id*. at 2–3.

---

[2] In light of certain assertions that Doss made, the Court noted that:

Doss can't have it both ways—whether she chooses to consent in writing to email service or rely on postal delivery, she will have to abide by the timeframe for responding to Defendants' requests and overcome whatever difficulties each manner of service might present.

4

The Court held the previously scheduled status conference on July 18, 2025, by video. *See* Doc. 44. Doss did not appear for the conference and her absence was unexcused. *Id*. at 1. The Court scheduled another status conference for September 11, 2025. *Id*.

The Court did not order Doss to show cause for her failure to attend the July 18, 2025 conference. Instead, the Court issued an order the same day in which it took account of Doss's pro se status and gave her "notice that her failure to follow Courts orders, including orders setting status conferences and discovery deadlines, may result in sanctions, including the dismissal of her lawsuit." Doc. 45, at 2. The Court also explained that:

> the purpose of the [conference] was to discuss the status of this case in view of the upcoming August 1 fact discovery deadline. Based on Doss's absence and failure to participate in any discussion about this upcoming deadline, the Court presumes that Doss will meet this deadline and expects that all fact discovery in this case will be completed by August 1.

*Id*. Doss did not timely file anything on the docket indicating that she had a concern with the August 1 fact discovery cutoff date.

On July 29, 2025, Defendants filed a "second notice of deposition of plaintiff." Doc. 47. In this filing, Defendants noted that Doss "failed to appear at [a] deposition agreed upon and noticed for July 28, 2025." *Id*. at 1. They added that Doss "advised [their] counsel of a family emergency two hours

---

Doc. 43, at 2–3 n.1.

5

before start time." *Id*. Defendants thus re-noticed Doss's deposition for July 30, 2025. *Id*.

On August 4, 2025, after receiving email communication from Doss, the Court issued an order reminding the parties that "[t]his type of communication is not permitted." Non-Document Order (Aug. 4, 2025). The order referenced an instruction in the Court's case management conference scheduling order prohibiting non-emergency email communications with Chambers, *see* Doc. 24, at 2–3, and instructed that "[a]ny information Doss would like to tell the Court must be made by submitting the appropriate filing on the docket."

That same day, Doss filed another motion to compel with respect to a discovery dispute. Doc. 48. The Court denied this motion because Doss had again failed to comply with the Court's case management plan regarding discovery-related disputes, which prohibits motions to compel absent compliance with the Court's discovery-dispute procedures. Non-Document Order (Aug. 5, 2025). In doing so, the Court referenced its order denying her first motion to compel and again cited the pages of the Court's case management plan containing the Court's instructions about how to present a discovery dispute. *Id*.

On August 5, 2025, Doss filed an opposed motion for extension of time for discovery. Doc. 49. In this filing, she began by asserting that she missed the July 18, 2025 conference—the conference that the Court scheduled during the May 13, 2025 conference, *which Doss attended*, *see* Doc. 40—because she didn't

6

receive "notification via mail."[3] Doc. 49, at 1. She next implied that the Court determined during the July 18 conference that she "failed to comply with discovery deadlines" and asked for the Court's "findings" on that alleged determination. *Id.* at 1–2.

Based on certain difficulties described in a motion regarding scheduling depositions, Doss asked the Court to extend the deadline for completing fact discovery. *Id.* at 2–4. Doss did not suggest a new deadline. The Court extended the fact discovery cut-off to September 11, 2025, and directed the parties to "file a Joint Status Report on or by August 19, 2025, listing the deposition dates." Doc. 50, at 3.

On August 19, 2025, the parties filed a joint motion for extension of deadlines and a joint status report. Docs. 52, 53. The Court granted the parties' extension request and set October 17, 2025, as the cut-off date for fact discovery. Doc. 54. But the Court "warned" the parties that it "will not extent these dates further." *Id.* at 2.

In the parties' extension motion, they stated that Doss "plan[ned] to conduct … depositions at the federal courthouse in order to seek intervention if necessary." Doc. 52, at 1. Responding to this statement and hoping to avoid confusion or delay, the Court in its extension order informed Doss that she:

> should not assume that there are or will be facilities within the courthouse to conduct depositions. So she must make any arrangements well in advance. Nor

---

3    In a later order, the Court explained all of the ways Doss was given notice of the July 18, 2025 conference. *See* Doc. 50, at 1–2.

7

>should Doss assume that the Court will be available to rule on any disputes that might arise during a deposition. And, if such a dispute should arise, any communication with the Court would occur by telephone, obviating the need for Doss to conduct depositions at or near the courthouse.

Doc. 54, at 2.

Doss filed her motion to recuse in late September 2025. *See* Doc. 55. In her motion, Doss asserts:

>As relevant here, the Magistrate Judge has denied Plaintiff's legitimate discovery disputes, misrepresented the official record on multiple occasions, unequally applied court rules, and has held similar prejudice against unrepresented parties in the past resulting in motions to disqualify, all of which gives the appearance that his impartiality is questionable, whether true or not, the appearance is present.

*Id.* at 2. Doss includes a timeline of six relevant events. *Id.* at 2. These events include:

- The June 18, 2025 denial of Doss's first motion to compel

- A purported June 25, 2025 event at which the Court failed to rule on a defense motion to compel and at which the Court set new discovery dates

- The July 18, 2025 conference at the which the Court "misrepresent[ed] the Record that [Doss] failed to comply with discovery deadlines and as a result threaten[ed] sanctions and dismissal of lawsuit for alleged noncompliance"

- The August 4, 2025 denial of Doss's second motion to compel during the which the Court

8

> failed to explain its alleged previous determination that Doss failed to comply with discovery deadlines, ignored proof of Defendants' discovery noncompliance, and failed to threaten sanctions against Defendants
>
> - A purported August 15, 2025 event or order in which the Court denied Doss's objection to the denial of her motion to compel and "misrepresent[ed] the record that discovery extension was needed due to [Doss] waiting until July 19, 2025, to schedule depositions"
>
> - The August 21, 2025 order granting the joint motion for extension of time and "pre-den[ying] [Doss's] future motion to conduct depositions at the courthouse, despite Plaintiff never formally requesting to conduct depositions."

*Id.* at 2–4.

*Discussion*

Under the Due Process Clause, every litigant is entitled to an unbiased adjudicator. *Railey v. Webb*, 540 F.3d 393, 399 (6th Cir. 2008); *see In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases."). By statute, a magistrate judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A judge must also recuse if "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

Section 455 "imposes an objective standard: a judge must disqualify himself 'where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *Burley v. Gagacki*, 834 F.3d 606, 616 (6th Cir. 2016) (quoting *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013)). The moving party bears the burden of demonstrating that recusal or disqualification is warranted. *Id.*

"[B]ias must be personal, or extrajudicial, in order to justify recusal." *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir. 1989). "'Personal' bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases." *Id.* Similarly, an extrajudicial source is one that "derives from a source outside judicial proceedings." *Liteky v. United States*, 510 U.S. 540, 554 (1994). And "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* at 555. According to the Supreme Court, judicial rulings alone "cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required … when no extrajudicial source is involved." *Id.* Instead, such rulings may be "grounds for appeal," but "not for recusal." *Id.*

With these principles in mind, Doss's motion does not get far. Contrary to what Doss asserts, *see* Doc. 55, at 9, she relies entirely on the Court's rulings and its interactions with the parties during the case management and other conference. She points to no "extrajudicial source" of bias and provides nothing

10

to show that hers is that "rarest [of] circumstances" in which the Court's rulings "evidence the degree of favoritism or antagonism required" for recusal. *Liteky*, 510 U.S. at 555.

Further, even putting the above aside, Doss's timeline shows that her motion is factually baseless and is instead based on her strained and out-of-context interpretation of the events in this case.

Doss points first to the denial of her first motion to compel. Doc. 55, at 4. But Doss doesn't claim that, contrary the Court's determination, she complied with the Court's discovery-dispute procedure. More importantly, as she notes, she largely received what she asked for in that the Court noted that Defendants should serve her by mail with their filings. *Id.* at 4; *see* Doc. 43, at 2. Doss does not explain how getting what she asked for reflects bias.

Next, Doss complains about the manner in which the Court handled Defendants' alleged June 25, 2025 motion to compel in comparison with her first motion to compel. Doc. 55, at 4. She returns to this topic later in her motion and argues that the Court allowed the Defendants to proceed with a motion to compel without complying with the Court's discovery-dispute procedure. *Id.* at 7. Doss says that this unequal treatment warrants recusal. *Id.* at 7–8. But Defendants have never moved to compel. So this aspect of Doss's motion, and her claim that it reflects an unequal application of the rules, *id.* at 4, 7, has no basis in fact.

11

Doss says that on July 18, 2025, the Court "misrepresented the record … by falsifying that [she] failed to comply with discovery deadlines." *Id.* at 5. July 18, 2025 was the date of the conference that Doss failed to attend. *See* Doc. 44. But the minutes of the conference do not reflect that the Court found that she failed to comply with discovery deadlines. *See id.* And the simultaneously issued order in which the Court warned "that her failure to follow Courts orders, including orders setting status conferences and discovery deadlines, may result in sanctions, including the dismissal of her lawsuit," likewise contained no finding that she failed to comply with discovery deadlines.[4] Doc. 45, at 2. As with Doss's previous factual assertion, this one is baseless.

Moving on, Doss notes the August 4, 2025 denial of her second motion to compel. Doc. 55, at 5. Doss references the email exhibits that were attached to her motion, which she says show that Defendants and their counsel were uncooperative. *Id.* She says that "[d]espite" this evidence, the Court "chose to misrepresent the record on August 19, 2025, using emails [that Doss] provided

---

[4] If Doss believes that this admonition constituted a finding that she failed to comply with discovery deadlines, she is mistaken. Because one could not know whether Doss's failure to attend augured future concerns, the admonition instead operated as a required warning in the event that she again failed to attend a court-ordered conference. *See Carver v. Bunch*, 946 F.2d 451, 454 (6th Cir. 1991); *cf. Sexton-Walker v. Detroit Pub. Sch.*, No. 2:09-cv-13969, 2011 WL 204607, at *4 (E.D. Mich. Jan. 21, 2011) ("the Court hereby advises and puts Defendant on notice that its continued failure to actively and timely defend this case may result in significant and serious sanctions against Defendant").

… on August 4, 2025, by suggesting that the Defendants failure to respond to her multiple requests was due to her waiting until July 19, 2025, to schedule depositions." *Id*. at 5–6.

For the sake of clarity, it is apparent that Doss is referencing Court's August 21, 2025 order. The Court did not issue an order on August 19, 2025. And in that order, the Court *granted* the parties' request for an extension. Doc. 54. Putting these points aside, the Court in its order noted that on August 8, 2025, it "granted … Doss's motion to extend the fact discovery deadline so that she could take the depositions that she was unable to schedule before the August 1 fact discovery deadline." *Id*. at 1. In a footnote, the Court implied that it acted generously, noting that "Doss waited until July 19—less than two weeks before the close of fact discovery—before trying to schedule her six depositions." *Id*. at 1 n.1 (citing Doc. 49, at 2).

Doss's assertion that the Court's footnote misrepresented the record is triply mistaken. First, the Court did not cite Doss's email evidence. As the citation in the Court's order reflects, the Court cited *Doss*'s motion. Second, in Doss's motion, *Doss* asserted that she "submitted request[s] regarding Defendants' availability on July 19, 2025." Doc. 49, at 2. Third, the Court did not say or suggest that the Defendants' alleged failure to respond to Doss's "multiple requests was due to her waiting until July 19, 2025, to schedule depositions."

13

Related to this, Doss seems to suggest that because she included with her second prohibited motion to compel evidence that she says shows that Defendants' counsel willfully failed to comply with her discovery obligations, the Court was bound to adjudicate her discovery dispute. Doc. 55, at 6. Apparently, she believes that the Court's failure to do so is evidence of partiality. *See id.*; *see also id.* at 3 (asserting that the Court "[i]gnored proof of Defendants noncompliance"). But one point of the Court's discovery-dispute procedure is that the Court does not address a discovery dispute unless the party raising the dispute follows the procedure. Doss cannot avoid the requirements of the Court's procedure by claiming that she has a genuine dispute. Doss points to nothing supporting the idea that enforcing the Court's rule is evidence of bias. Indeed, a party's failure to comply with discovery-dispute procedures is a valid reason to "deny discovery requests." *Copeland v. Regent Elec., Inc.*, 499 F. App'x 425, 429 (6th Cir. 2012); *Mohney v. USA Hockey, In*c., 5 F. App'x 450, 460 (6th Cir. 2001).

Also on this point, Doss says that the Court failed to explain its alleged July 18, 2025 determination that she failed to comply with discovery deadlines and, although it "threaten[ed] to impose sanctions" on her after she failed to attend a conference, it did not threaten sanctions after she offered "proof" of Defendants' discovery noncompliance. Doc. 55, at 3. The Court, however, has explained that it did not find on July 18 that Doss failed to comply with discovery deadlines.

14

Further, while the Court warned Doss about the possibility of sanctions, it only did so after she failed to attend a court-ordered conference, which she had known about for two months. And this failure did not result in an order to show cause, even though it followed Doss's failure in April 2025 to attend the in-person case management conference.

It's true that the Court hasn't similarly warned Defendants for alleged discovery abuses. But because Doss failed to properly present a discovery dispute, the Court has not been in a position to judge whether Defendants have failed to comply with their obligations, much less to judge whether an admonition would be appropriate.

Doss asserts that after she raised in her August 4, 2025 objections the Court's "clear bias and partiality," the Court "directly responded with suggesting that [Doss's] failure to schedule Defendants depositions earlier was the cause of Defendants noncompliance with rules of discovery and their refusal to respond to Plaintiff before discovery cut off." Doc. 55, at 7. Doss cites nothing to support this assertion.

The only relevant order that the Court issued near August 4, 2025, was on August 8, 2025. But what happened in that order is nearly the opposite of what Doss suggests. As the Court's order reflects, it noted that Doss showed in her motion "that she tried to schedule depositions before the fact discovery cutoff date of August 1, but Defendants were unable to accommodate her suggested dates." Doc. 50, at 3. As a result, the Court granted *Doss's* motion to

15

extend the fact discovery date, and, although she didn't specify a new deadline, extended the deadline by six weeks to September 11, 2025.

And in an order issued on August 21, 2025, the Court noted that in their joint motion, *the parties* "explain[ed] that, due to Doss's personal reasons and Defense counsel's preplanned vacation and an upcoming trial, they [we]re unable to hold … depositions before mid-October." Doc. 54, at 1. The Court then granted the parties' extension request. In neither order did the Court suggest that Doss's "failure to schedule Defendants depositions" was the cause of Defendants' alleged failure to comply with discovery rules.

Doss's final assertion is that in its August 21, 2025 order granting the joint motion for extension of time, the Court "pre-denied [her] requests for a court order to conduct depositions at the courthouse." Doc. 55, at 8. She adds:

> Despite Plaintiff never requesting to conduct depositions at the courthouse, no such motion being currently before the court, and only having discussed her intent to possibly conduct depositions at the courthouse with Defense counsel, [the Court] has pre-denied any future requests that Plaintiff may file with the court in [its] August 21, 2025 rulings on the basis that [it] predetermined based on hearsay from Defense counsel, that Plaintiff, assumed the court would entertain a court order to conduct depositions at the courthouse and assists her with disputes that may arise during depositions.

*Id.* at 8–9. Once again, Doss's assertion is belied by the record.

As noted, in their August 19, 2025 joint extension motion, the parties reported that Doss "plan[ned] to conduct … depositions at the federal courthouse in order to seek intervention if necessary." Doc. 52, at 1. The Court,

16

being fully aware that Doss is proceeding pro se and wishing to avoid a circumstance in which Doss, with deponents and counsel in tow, might arrive unexpectedly at the courthouse, responded to the parties' report. The Court instructed that Doss should not simply "assume that there are or will be facilities within the courthouse to conduct depositions" or that the Court "would be available to rule on any disputes that might arise during a deposition." Doc. 54, at 2. Instead, Doss "must make any arrangements well in advance." *Id*.

So the Court did not deny anything when it provided its instructions to Doss.[5] And if Doss is asserting that the Court learned of Doss's plans from a conversation with Defendants' counsel, she is mistaken. The Court knew about Doss's plans because the parties told the Court about them in their motion.[6]

---

[5] Even if the Court had suggested an unwillingness to somehow participate in Doss's depositions, she does not explain how that could be evidence of bias. After all, the Court did not agree to referee depositions conducted by Defendants' counsel. And deposition questioning under court supervision is not a typical occurrence but rather something that would occur, if at all, only after a serious breakdown in the parties' ability to conduct or conclude a deposition. *See Hailey v. Bruner*, No. 1:19-cv-224, 2022 WL 20044185, at *1 (W.D. Mich. Apr. 12, 2022) ("Conducting a deposition under the supervision of a judicial officer is an unusual remedy, appropriate in only the most extreme circumstances."); *Hassell v. Norfolk S. Ry. Co.*, No. 2:07-cv-13319, 2008 WL 5068605, at *1 (E.D. Mich. Nov. 19, 2008).

[6] Contrary to Doss's assertion, Doc. 60, at 8, the July 18, 2025 conference which she failed to attend did not involve "improper ex parte communication." Doss had been given notice of the conference and it took place on the record. Her unexcused and unexplained failure to attend the conference did not transform it into an ex parte event.

Doss's motion is based on her misunderstanding or misrepresentation of the events in this case. No objective observer "with knowledge of all the facts would conclude that th[is] judge's impartiality might reasonably be questioned." *Burley*, 834 F.3d at 616. By relying on a version of events that varies from the reality reflected in the record, Doss has failed to carry her burden. *See id.*

*Conclusion*

Doss's motion to recuse, Doc. 55, is DENIED.

So ordered.

Dated: October 28, 2025

                                                */s/ James E. Grimes Jr.*
                                                James E. Grimes Jr.
                                                U.S. Magistrate Judge